HENDRIX v. COTTON MILLS.

(Filed April 18, 1905.)

*Elevators—Negligence—Accident—Burden of Proof.*

1. In an action for damages for injuries sustained by plaintiff while going up in an elevator, all the circumstances attending the occurrence are to be considered in determining whether it resulted from actionable negligence upon the part of the defendant, or only an accident, and hence not actionable.

2. In an action for personal injuries, the plaintiff has the burden of proving that the defendant was negligent and that such negligence caused the injury.

3. Where the plaintiff, a boy of 12 years of age, was injured while going up on a freight elevator, his leg being caught in reaching out to get his hat which had been thrown off by another boy, and the elevator was not out of order or dangerous for persons to go on and was in charge of an adult, *held*, that the injury was an accident.

ACTION by Leandrix Hendrix by his next friend, L. S. Hendrix against the Cooleemee Cotton Mills, heard by *Judge C. M. Cooke* and a jury at the Fall Term, 1904, of the Superior Court of DAVIE County.

The plaintiff sued to recover damages for an injury received while going up on a freight elevator of the defendant's mill. From a judgment in favor of the plaintiff, the defendant appealed.

*Watson, Buxton & Watson* and *Manly & Hendren* for the plaintiff.

*T. B. Bailey, P. H. C. Cabell* and *E. L. Gaither* for the defendant.

BROWN, J. All the evidence tended to prove that the plaintiff at the time of the injury was a boy twelve years of

age; that he was a floor sweeper at the defendant's mill and occasionally helped Pink Foster take small boxes of quills on the freight elevator up to the third story spinning room, and had used it ten or twelve times. The plaintiff gives the following account of the injury: "The day I got hurt, Pink Foster came to me to help him take up the quills for the weaving room. I told him I would do it if the boss man said so. Foster went off to see the boss and when he came back, in consequence of what he said, Foster and I picked up the quills and put the box on the elevator. It was not my regular business to take up the quills. I only went when I had nothing else to do or when directed to do so by the boss. The taking up the quills and conveying them to the spinning room was Pink Foster's regular business. Nobody ever gave me any instructions about how to do when I went upon it. That was the only elevator I ever saw. When we got on the elevator that time, I squatted down at the end of the box we were taking up. The elevator was moving up. Jim Thornton was right behind me and he threw my hat off on the card room floor (that was the second floor, the spinning room being the third floor.) I reached out to get my hat on the card room floor and my knee was caught, but I do not know how."

There was other evidence, but nothing that contradicted the plaintiff's own version of the occurrence.

In the view we take of this case, it is unnecessary to consider the numerous prayers for instruction and the exceptions appearing in the record.

The defendant asked the court to instruct the jury in substance that notwithstanding the plaintiff was a minor about twelve years of age, and independent of any questions of assumption of risk and contributory negligence, unless the jury find from the evidence that the negligence of the defendant was the proximate cause of the injury the jury must

find the first issue 'no.' This instruction was not given and the defendant excepted.

The question of proximate cause generally arises when contributory negligence is pleaded and it becomes material to ascertain the particular negligence which caused the injury, whether that of the plaintiff or the defendant. It has been variously defined, but the generally accepted definition is the one given in American & English Enc. p. 485 (2nd Ed.): "A proximate cause in the law of negligence is such a cause as operates to produce particular consequences without the intervention of any independent unforeseen cause without which the injuries would not have occurred." It is unnecessary to consider whether the questions of contributory negligence and assumption of risks arise in this case. The burden rests first on the plaintiff to satisfy the jury in all cases like this that the defendant committed some act of negligence or was guilty of some omission of duty constituting negligence, and further that such negligence was the occasion or cause of the injury.

In *Edwards v. Railroad,* 129 N. C., 82, it is said that "The negligence of the defendant, no matter how great, would not of itself have rendered it liable unless it had contributed to the death of the plaintiff's intestate." All the authorities agree that all the circumstances attending such an occurrence, as is described in the record, are to be considered in determining whether it resulted from actionable negligence upon the part of the defendant, or only an accident, and hence not actionable, however unfortunate it may be.

The injury to the plaintiff was not caused by any defective machinery nor was he placed at work upon dangerous machinery without proper instructions. He was a floor sweeper, and we presume a boy of average intelligence, as there is no evidence to the contrary. He also occasionally helped Pink Foster carry small boxes of quills on the eleva-

HENDRIX *v.* COTTON MILLS.

tor to the spinning room on the third floor. The defendant was not required to furnish a passenger elevator. There is no evidence that the freight elevator was out of order or dangerous for persons to go on. On the occasion when the plaintiff was hurt, it was in charge of Thomas Plummer, a grown man. Mr. Shore was on it, and also three boys, one of whom was the plaintiff on his way with Foster, taking the boxes to the spinning room on the third floor. When the boy threw the plaintiff's hat out on the card room floor as the elevator was passing it in its ascent, the plaintiff, doubtless yielding to a natural impulse, reached out of the ascending elevator to recover his hat, and his leg was caught and injured. · The plaintiff had used this elevator ten or twelve times and was therefore accustomed to it. When he got on the elevator, the plaintiff was prudent enough to "squat down" and was evidently in a place of safety. Had not Thornton thrown off the plaintiff's hat, or had the plaintiff waited till the elevator stopped at the third floor, and then have come back for it, he would not have been hurt.

We are not prepared to say that it is negligence *per se* to send minor operatives in a mill to carry small boxes of goods up stairs on a freight elevator in good order and in charge of a competent man. Such work is evidently necessary. But assuming it was negligence, under the facts of this case as testified to by the plaintiff and all the witnesses, it was not the cause of the injury.

In *Gallagher v. Railroad*, 37 La. Ann. 288, it is said that "If the accident happened from a sudden and unanticipated act, which is the result of the thoughtless impulse of a child, of which human forethought could not be prescient, no liability attaches to the employer." This rule does not result from holding a child chargeable with contributory negligence, but (as Mr. Bishop says in Article 575 of his work on Non-Contract Law) from the fact that under such cir-

cumstances there is no actionable negligence on the part of the person whose conduct is alleged to be wrongful.

We are of opinion that upon all the evidence the injury to the plaintiff was "an unforeseen event from a known cause," and was not the result of any actionable negligence on the part of the defendant.

New Trial.