ROLIN v. TOBACCO CO.

(Filed May 8, 1906).

*Master and Servant—Children—Illegal Employment—Negligence—Proximate Cause—Question for Jury—Contributory Negligence of Children.*

1.  The employment in a factory of a child under twelve years of age, either knowing his age, or failing to have the certificate of his parents in regard to his age, in violation of the provisions of chapter 473, Acts 1903, is very strong, if not conclusive evidence of negligence, in an action for injuries to the child by the operation of one of the machines in the factory.

2.  Where there is evidence from which a jury may reasonably have drawn the inference that the child was acting in the line of his employment at the time of his injury, the question of proximate cause must be submitted to the jury.

3.  A child under twelve years of age is presumed to be incapable of so understanding and appreciating dangers from the negligent act, or conditions produced by others, as to make him guilty of contributory negligence.

4.  Contributory negligence on the part of a child is to be measured
    by his age and his ability to discern and appreciate the cir-
    cumstances of danger.  He is not chargeable with the same
    degree of care as an experienced adult, but is only required to
    exercise such prudence as one of his age may be expected to pos-
    sess, and this is usually, if not always, when the child is not
    wholly irresponsible, a question of fact for the jury.

5.  Chapter 473, Acts 1903, as incorporated in Revisal, sections 3362-4,
    makes the prohibition dependent upon "knowingly and wilfully"
    employing a child, the original act not containing these words.

ACTION by Willie Rolin, by his next friend, against R. J.
Reynolds Tobacco Co., heard by *Judge E. B. Jones* and a
jury, at the December Term, 1905, of the Superior Court of
FORSYTH.

Action for damages for personal injuries sustained by
plaintiff while in defendant's employment.  Plaintiff testi-
fied: "I commenced work for the defendant about a year ago,
May, 1904.  I went in there one Monday morning.  Mr.
Nichols, boss man in the room, spoke to me and asked me if
I wanted to weigh fillers.  I told him 'yes.'  He took me
over and put me to weighing; then he put me to cutting
lumps on a table.  They were making three-inch work.  I
worked at that place three days on one fortnight, and on
the second fortnight six days.  After cutting lumps I then
was a sweeper on the floor.  I cleaned up about machines and
around on the floor.  That evening at 4 o'clock we got out
of the factory.  The weigh boy went down the house to wash
his hands.  The man that run that machine went down the
house to clean up another machine.  I was cleaning up that
one I worked at.  The weigh boy ran up and threw a piece
of cut tobacco in the machine.  I reached my hand in there
to take it out.  He pulled the lever and run and the machine
caught my hand and tore it off.  I don't know the fellow who
took me out of the machine.  Mr. Nichols took me up in the
house above and he said, 'Did you not tell me you were twelve
years old?'  I said, 'no.'  I was eleven years old in June,

1903. When cutting off lumps I was twelve inches away from the machine. No one explained to me the dangerous character of the machine, nor told me anything about it. I was born June 4, 1892. I would not have been hurt if the boy had not pulled the lever. The machine was set, and you had to pull the lever that made it work and set it. At the time I was hurt I worked by the side of John Dillon all that day. Table and truck between me and the machine. The lever is in front of the machine. I did not get a lump and try to press it in the machine. He, Dillon, had pressed a lump that day for me. It was not after quitting time when I was hurt. If it was, all hands had not gotten out of the factory. No one told me to clean up the machine. I saw others cleaning up the machine and I did so. No one ever asked me to clean up the machine or do anything about it. It was part of my duty to clean up around the machine. Will Hairston is the name of the boy that pulled the lever of machine on me. He is working down there in the factory now. There was a belt attached to the machine running at the time. No one told me to clean up around the machines. Other boys were at work cleaning up." There was other evidence in regard to plaintiff's age, extent of injury, etc. At the conclusion of the evidence defendant demurred and moved for judgment as of nonsuit. Motion allowed. Plaintiff excepted. Judgment. Appeal by plaintiff.

*L. M. Swink* for the plaintiff.
*Manly & Hendren* for the defendant.

CONNOR, J., after stating the case: The plaintiff bases his right to recover on the facts admitted by the demurrer upon two propositions: That his employment by the defendant, he being under twelve years of age, was in violation of the provisions of chapter 473, section 1, of the Act of 1903, prohibiting employment of children under twelve years of age,

was *per se* negligence or at least evidence of negligence, and that such negligence was the proximate cause of the injury sustained by him.

The appeal, for the first time, presents to us for construction and application the act passed by the Legislature for the protection of young children by expressly prohibiting their employment in mills and factories. The first section is plain and calls for no construction by the court. It provides: "That no child under twelve years of age shall be employed in any factory or manufacturing establishment in this State." The provision in regard to oyster-canning factories is not material to any question presented by this appeal. The second section prescribes the hours during which persons under eighteen years of age shall work. The third section provides that parents of children seeking employment shall give certificates in regard to their age, and makes any person knowingly and wilfully violating the provisions of the act indictable, etc. The act is the result of the well considered, and, we think, wise conclusion of the General Assembly, reflecting and crystalizing into law the will of the people of the State. It is, therefore, not only our duty, but in entire harmony with our judgment to give to the statute such a construction and application as will effectuate the intention of the General Assembly, remedy and prevent the continuation of an evil which threatens the welfare of the young children, and, thereby, the best and highest interest of the State.

Referring to and applying the provisions of an act in almost the same language as ours, the Court of Appeals in New York, in *Marino v. Lehmaier,* 66 North Eastern, 572, says: "It has been said of the last century that it was the age of invention. Machines had been devised and constructed with which very many articles used by mankind were manufactured. Numerous factories had been established throughout the country filled with machines, many of which were easily operated, and the practice of employing

boys and girls in their operation had become extensive, with the result that injuries to them were of frequent occurrence. We think it is very evident that these reasons induced the Legislature to establish definitely an age limit under which children shall not be employed in factories." The Supreme Court of Tennessee, in *Queen v. Dayton,* 95 Tenn., 458, held that the employment of a minor within the age prohibited by the statute was negligence; that the breach of the statute was actionable negligence. In *Perry v. Tozer,* 90 Minn., 431, it is said: "Authorities of the highest respectability hold that the violation of a statute prohibiting the employment of a child in a hazardous occupation, when such employment is prohibited by law, establishes a right to recover for negligence; hence, in such cases liability is to be presumed from the employment in disobedience of law. * * * Unless we can say that the statute has no effect in a suit for damages when the law has been violated, we are required to hold that the employment which the Legislature positively forbids furnishes evidence tending to show, at least presumptively, that one of the causes of the injury in this case was the violation of the statute, in analogy to the well known doctrine that ordinances regulating the hitching of horses, the speed of trains in cities, or other subjects of municipal control, are held to be evidence to sustain the charge of negligence. * * * It is well settled that a wrongdoer is at least responsible for the results likely to occur, or resulting as a natural consequence from his misconduct or such as might have been reasonably anticipated."

We have, in accordance with the uniform current of authority, held that the violation of a town ordinance regulating the speed of trains and street cars is at least evidence of negligence. *Norton v. R. R.,* 122 N. C., 910; *Edwards v. R. R.,* 129 N. C., 78; *Davis v. Traction Co.,* at this term. The principle was applied to the violation of a statute requiring fire escapes to be maintained in houses rented to tenants.

*Willy v. Mulledy,* 78 N. Y., 310 (34 Am. Rep., 536), *Earle, J.,* saying: "Here was, then, an absolute duty imposed upon the defendant by statute to provide a fire escape, and the duty was imposed for the sole benefit of the tenants of the house, so that they would have a mode of escape in case of a fire. For a breach of this duty causing damage, it cannot be doubted that the tenants have a remedy." In *Marino v. Lehmaier, supra, Parker, C. J.,* in a concurring opinion, says: "Against such accidents the State attempted to guard this boy, among others. But the defendant disregarded the law and employed and gave directions to one of the subjects of the State in violation of the State's policy, and the outcome of it was an injury to the child, which could not have happened had the law been observed. In such a case it would seem that the necessary and logical practice would be that the jury should be permitted to consider the violation of the statute, in connection with the other facts, as evidence tending to show negligence on the part of the defendant." The learned *Chief Judge* cited a number of cases to sustain his conclusion. Before the passage of the statute the present *Chief Justice,* in *Ward v. Odell,* 126 N. C., 946, speaking for two members of this court, said that notwithstanding there was no statute prescribing the age within which children should not be employed in mills and factories: "There is an aspect in which the matter is for the courts, that is, whether it is negligence *per se* for a great factory to take children of such immature development of mind and body and expose them for twelve hours per day to the dangers incident to a great building filled with machinery constantly whirring at a great speed." The same line of thought is expressed and sustained by numerous authorities in *Fitzgerald v. Furniture Co.,* 131 N. C., 636. Certainly, with the positive prohibition imposed by the Legislature against the employment of a child under twelve years of age, there can be no question that such employment is very strong if not

conclusive evidence of negligence. If the age is known to the defendant, the employment is a positive defiance of the law; if the employment is without pursuing the method prescribed and so easily followed, to learn the truth, its failure to do so gives it but little, if any, better status. Independent of the statute, the courts have uniformly held, and the text writers so declare, that the employment of young children either upon or in buildings where dangerous machinery is operated imposes the duty of carefully explaining to them the danger and constant warning and watchfulness for their protection and safety. It is not an unreasonable burden upon employers because they take children into their service with full knowledge of the risk to which they are exposed, and should be required to take the consequence of such employment.

We do not entertain any doubt that, upon the evidence before the court, the question of defendant's negligence should have been submitted to the jury. Defendant says that notwithstanding its negligence no cause of action accrued to plaintiff because the injury was not the proximate cause of such negligence, but of an entirely unforeseen and unavoidable agency, the other boy pulled the lever. It does not appear whether this boy was under twelve years of age. It has been frequently held that when persons negligently left dangerous machines or other instrumentalities exposed to the interference of children, and by reason thereof they have sustained injury, such result should have been contemplated as reasonably probable, fixing liability on the original negligent act. In this connection it is said in *Marquette Coal Co. v. Dielie,* 110 Ill. App., 684, referring to the same suggestion made by defendant: "If plaintiff was injured while absent from the post of duty, or while violating his orders, or if it was carelessness or negligence for him to run between the sides of the moving cars and the mine wall, still, in our judgment, those facts would not prevent a recovery under the second count.

The statute absolutely forbids the employment of a child of that age in a mine. One reason, no doubt, is that immature children are liable not to understand the significance and importance of the regulations prescribed for the mine and the employees therein; they may thoughtlessly disobey orders or expose themselves to peril or do acts which would be careless in an adult. The company which violates the statute ought not to be allowed to screen itself from liability because the child has been injured by reason of those childlike traits which give rise to the statute. * * * Such statutes are sustainable under the police power of the State and should be so construed as to accomplish the object sought to be attained, and to correct the evils sought to be remedied. Holding the employers of children in violation of this statute to a strict liability for injury that may happen to the child while engaged in such inhibited employment ought to have a wholesome influence tending to check the evils against which this legislation is directed." The court concluded, "We hold defendant assumed all risk of injury to the boy arising from his employment of the boy." The Court of Appeals of New York, in *Hickey v. Taaffe,* 105 N. Y., 36, after discussing the duty of giving such instruction as will enable him to fully understand and appreciate the danger incurred, says: "If a person is so young that even after full instructions he wholly fails to understand them and appreciate the dangers arising from want of care, then he is too young for such employment, and the employer puts or keeps him at such work at his own risk." It is, therefore, a question for the jury to say whether, upon competent testimony, the plaintiff was given that full and careful instruction in regard to the danger incident to his employment, and whether he was capable of understanding such danger after instruction. *Morris v. Stanfield,* 81 Ill. App., 264, was an action by a minor for injuries sustained by an unprotected saw. The defendant contended the proximate cause of the

injury was the interference of another person. The court said: "If appellee was under 13 years of age and was employed in appellant's factory, every day of his employment was a separate and distinct violation of law. * * * If it was negligence to put a boy under 13 years of age at work in a factory within a few inches of an unprotected buzz saw, any act of negligence of a fellow servant not wilfully intended to injure appellee, that brought him in contact with the saw, was a concurrent act of negligence. Such act may have been the immediate intervening cause, but the unlawful employment, continuing, was in combination with the intervening act a proximate cause of the injury." The principle was applied in *Nagel v. Railway,* 75 Mo., 653: "The defendant owned or had control of a turntable located in a portion of the town where children were in the habit of playing. The turntable was not locked or otherwise fastened. The plaintiff's child with other children was playing upon it when the child was killed." In passing upon one of the defendant's exceptions the court said: "It is also urged that the objection to the evidence should have been sustained because the petition shows that the plaintiff's son was injured by the acts of other children in revolving the turntable. This point we think is not well taken. If the defendant was negligent in not securing the turntable so that it could not be revolved by children to their injury, the mere fact that it was revolved by other children who were playing upon it, at the time the child was injured, will not excuse the defendant if such act ought to have been foreseen or anticipated by it. That it ought to have been foreseen and provided against is shown by the case of *Koons v. Railroad,* 65 Mo., 592." In *Railroad v. Fort,* 84 U. S., 553, in which a parent was suing for injury sustained by his son, a boy of 16 years of age, the court said: "This boy occupied a very different position (from an adult). How could he be expected to know the peril of the undertaking? He was a mere youth without experi-

ence, not familiar with machinery. Not being able to judge for himself, he had a right to rely on the judgment of. Collett, and, doubtless, entered upon the execution of the order without apprehension of danger. Be this as it may, it was a wrongful act on the part of Collett to order a boy of his age and inexperience to do a thing which, in its very nature, was perilous, and which any man of ordinary sagacity would know. to be so. In *Lynch v. Murdin,* 41 E. C. L., 29 (422), it appeared that the defendant's servant left a horse and cart unhitched on the street. The plaintiff with other children was playing with the horse and climbing on to the buggy when the plaintiff was hurt by the horse moving away. To an action for damages, the defendant said that the plaintiff brought the injury upon himself. *Denman, C. J.,* after discussing the conduct of the defendant's servant in leaving the horse unhitched, said: "But the question remains, can the plaintiff, then, consistently with the authorities, maintain his action, having been at least equally in fault. The answer is that, supposing that fact ascertained by the jury, but to this extent that he merely indulged the instinct of a child in amusing himself with the empty cart and deserted horse, then we think that the defendant cannot avail himself of that fact. The most blamable carelessness of his servant having tempted the child, he ought not to reproach the child with yielding to that temptation. He has been the real and only cause of the mischief. He has been deficient in ordinary care; the child acting without prudence or thought has, however, shown these qualities in as great degree as he could be expected to possess them." In *Iron Co. v. Green,* 65 South Western (Tenn.), 399, the same defense was made, that the plaintiff's wrongful employment of the child was not the proximate cause of the injury. *Beard, J.,* said: "Defendant had no right to employ this minor. While in its employment on its premises and foolishly playing with panels, the property of the company, too heavy for his strength to hold, yet with boyish heed-

lessness disregarding this fact, this injury is inflicted upon him. Had he not been employed by this defendant, there is no reason to suppose that he would have been on its premises when the temptation occurred to him to prank with these panels to his serious hurt. In each of the propositions presented by the respective parties to the suit, we think there is causal connection between the employment and the injury." The doctrine is thus stated by Bailey in his work on Personal Injuries, 1291: "When the negligent act of the defendant naturally induced or offered opportunity for the subsequent act of a child, being of a character common to youthful indiscretion, and which, concurring with the defendant's earlier wrongful act, produced the injuries complained of, the defendant will in general be held liable. Children wherever they go must be expected to act upon childish instincts and impulses, a fact which all persons who are *sui juris* must consider and take precautions accordingly. A person who places in the hands of a child an article of a dangerous character and one likely to do an injury to the child itself or to others, is liable in damages for injury resulting, which is a natural result of the original wrong, though there may be an intervening agency between the defendant's act and the injury." For this statement of the law the author cites a number of cases, among others *Lynch v. Nurdin, supra,* which Mr. Beach says is the leading English case on the subject and has been generally followed in this country, both in the Federal and many of the State courts. Cont. Neg., sec. 137-140; *Railroad v. Stout,* 2 Dill., 294; Fed. Cas. No. 13504, 84 U. S., 667. This was one of the series known as "*The Turntable cases,*" 75 Mo., 653. The case was tried by *Judge Dillon,* and on appeal *Mr. Justice Hunt* said: "The evidence is not strong and the negligence is slight, but we are not able to say that there is not evidence sufficient to justify the verdict. *  *  * The charge was in all respects sound and judicious." In *Queen v. Dayton. Coal Co., supra,*

it is said: "Of course we do not hold that if the boy had died of organic disease of the heart, or from a stroke of paralysis, or from some cause wholly disconnected with his employment, the company wuld have been liable, simply on account of the employment in violation of the statute."

The learned counsel for defendant cite us to a number of cases more or less in conflict with the line of authorities which we have noted. In a few cases it is held that the statute, prohibiting the employment of young children, does not change the rule in respect to negligence and that in such actions the rules and principles governing prior to the passage of the statute prevail. They are clearly out of harmony with the best considered and, we think, sound view. Several of them, upon the peculiar facts in the record, hold as matter of law, that the violation of the statute was not the proximate cause of the injury. In other cases the alleged negligence was in the failure of defendant to box, or otherwise protect machinery in the manner required by statutes wherein it is held that plaintiff's recovery for injury sustained is barred by working with such machines in the presence of obvious danger, etc. The distinction between such cases and ours is pointed out in *Am. C. & F. Co. v. Armentraut,* 214, Ill., 509. "The distinction is that in those cases the employment of a servant was lawful. Here the employment was unlawful. The injury resulted from the unlawful employment and while appellee was engaged in doing the precise thing that appellant directed him to do."

Defendant relies upon the decision of this court in *Hendrix v. Cotton Mills,* 138 N. C., 169. There the plaintiff was a boy of twelve years of age, hence not within the protection of the statute. The plaintiff, at the time of the injury, was, at the request of another boy, doing something entirely out of his line of employment. He was accustomed to the elevator. It must be conceded that expressions are to be found in the opinion tending to sustain the defendant's conten-

tion, but we think the cases may be distinguished. Plaintiff says: "After cutting lumps I then was a sweeper on the floor. I cleaned up about machines and round the floor. That evening at 4 o'clock we got out of the factory. The weigh boy went down the house to wash his hands. The man that ran that machine went down the house to clean up another machine. I was cleaning up that one I worked at. The weigh boy ran up and threw a piece of cut tobacco in the machine. I reached my hand in there to take it out. He pulled the lever and ran, etc.  *  *  *   It was not after quitting time that I got hurt. If it was, all hands had not gotten out of the factory. No one told me to clean up the machine; I saw others cleaning up the machine and I did so."

There is much in this testimony from which a jury may reasonably have drawn the inference that the child was acting in the line of his employment. It may be that we do not correctly interpret his testimony, but it impresses us, with our knowledge of the alertness and desire of children to be useful, as this child, by seeking employment showed himself to be, that he thought it was his duty to take the piece of tobacco out of the machine. Certainly it is not a necessary, or even a fair interpretation of his conduct that he was wanton and reckless. Is it not rather the conduct of a boy seeking to discharge his duty to his employer? It was for the jury to draw such inferences from his testimony as are reasonable. *Railroad v. Stout, supra.*

We think a reasonable construction of his conduct in taking the tobacco out of the machine is that he was, or reasonably supposed that he was, discharging his duty. He was, it seems, required to clean up the machine. We should hesitate to conclude that the other boy wilfully and, therefore, wickedly threw the lever deliberately intending to crush the plaintiff's hand. It is more in accordance with childish impulse that he did it to frighten the plaintiff and see him jerk his hand back. While it was a reckless and wanton act, it was

one of the freaks and pranks which might not unreasonably be anticipated from leaving boys together in a mill, surrounded by dangerous machinery. It was for that reason, among others, that the Legislature prohibited the employment of children in such places. The fact that the statute was enacted, as we know, after several ineffectual efforts, puts an employer upon notice that in the eye of the law based upon experience, it was dangerous to life and limb of children to be so employed and exposed to the very kind of danger by which the plaintiff was injured. To permit the defendant to escape liability for violating the statute by saying that it did not anticipate this particular condition, with its disastrous results, would be to nullify the law. Of course it did not anticipate this particular condition or result; if it had done so, the employment would have been not negligent but criminal. Neither did the servant who left the horse unhitched in *Merbin's case,* anticipate that children would play with and frighten the horse and cause the plaintiff to suffer injury; but the court held that he ought to have done so—so in the *Turntable cases* the same defense was made. If the plaintiff be required to show that, in every negligent act, the particular result was in fact anticipated, it would be difficult to maintain any action for injury sustained by the negligence of another. *Drum v. Miller,* 135 N. C., 204. The law leaves the decision of the question of proximate cause to the jury, except when upon the facts but one inference could be drawn, as in the *Turntable cases* and many others in the Reports. The State says to employers that they must not take the children under 12 years of age into their mills and factories; that to do so endangers their lives and limbs, dwarfs them mentally, morally and physically; that it is upon the children that the permanent power and welfare of the State depend. They must not, below the tender and immature age, fixed by the statute, be brought into contact with iron and steel machinery propelled by the powerful agencies

of steam or electricity. Considered from any point of view, the right of the child to have the opportunity to grow to at least the age named in the statute in a pure atmosphere, without danger of mutilation of body, dwarfing of mind, and to attend the schools provided by the State, the legislation is founded upon a wise and humane policy.

Its violation followed by injury gives a cause of action to the child upon the elementary principle that "whenever the common law or a statute imposes on one a duty, if of a sort affecting the public within the principle of the criminal law, a breach of it is indictable, and a civil action will lie in favor of any person who has suffered especially therefrom; or, if the matter of the law involves only the interest of individuals, anyone who has received harm from another's disobedience may have his suit against him for damage." Bishop Non-Contract Law, section 132; Comyn's Dig., 453; *Greenlee v. Railroad,* 122 N. C., 977; *Troxler v. Railroad,* 124 N. C., 189. The defendant says, whatever its breach of duty may have been, the plaintiff was negligent and by such negligence contributed to his injury. The authorities cited by the learned counsel, applied to the conduct of an adult or one not within the protection of the statute, fully sustain their contention. But when we come to measure the duty of the child in regard to the exercise of care for his safety, an entirely different principle controls. Within certain ages, courts hold children incapable of contributory negligence. We do not find any case, nor do we think it sound doctrine, to say that a child of twelve years comes within that class. Adopting the standard of the law in respect to criminal liability, we think that a child under twelve years of age is presumed to be incapable of so understanding and appreciating danger from the negligent act, or conditions produced by others, as to make him guilty of contributory negligence. Mr. Labatt says: "The essential and controlling conception by which a minor's right of action is determined with refer-

ence to the existence or absence of contributing fault, is the measure of his responsibility. If he has not the ability to foresee and avoid the danger to which he may be exposed, negligence will not be imputed to him if he unwittingly exposes himself to danger. For the exercise of such measure of capacity and discretion as he possesses, he is responsible." Master & Servant, sec. 348. It is in such cases a question for the jury. 4 Thompson Neg., sec. 4587; Beach Cont. Neg., sec. 136. "Whether he could be guilty of contributory negligence or not was a question of fact to be determined by the jury, dependent upon the other fact whether it had been shown that the deceased had capacity to be guilty of contributory negligence. Between seven and fourteen a child is *prima facie* incapable of exercising judgment and discretion, but evidence may be received to show capacity." T. C. & C. Co. v. *Enslen,* 129 Ala., 336; *Glover v. Gray,* 9 Ill. App., 329.

In several cases it is held that when a statute is violated and results in the injury of the child, the defense of contributory negligence is not open to the defendant. *Am. C. & F. Co. v. Armentrout, supra.* The better view seems to be otherwise. The Tennessee court, after discussing the question, concludes: "It is hardly necessary to add that contributory negligence on the part of the minor is to be measured by his age and his ability to discern and appreciate the circumstances of danger. He is not chargeable with the same degree of care as an experienced adult, but is only required to exercise such prudence as one of his years may be expected to possess. "As the standard of care thus varies with the age, capacity and experience of the child, it is usually, if not always, when the child is not wholly irresponsible, a question of fact for the jury whether a child exercised the ordinary care and prudence of a child similarly situated; and if such care was exercised, a recovery can be had for an injury negligently inflicted, no matter how far the care used by the child falls short of the standard which the law exacts for determin-

ing what is ordinary care in a person of full age and capacity." 7 Am. & Eng. Enc., 409; *Plumly v. Birge,* 124 Mass., 57.

His Honor erroneously sustained the demurrer to the evidence. In the light of the testimony he should have submitted the case to the jury, instructing them that if they found the facts as testified to, the defendant was guilty of negligence in employing the plaintiff, either knowing his age, or failing to have the certificate of his parents as provided by the statute; that if they found that such negligence was the proximate cause of the injury, they should answer the first issue "yes." In regard to the alleged contributory negligence of the plaintiff, he should have instructed the jury in accordance with the principles announced by the authorities herein cited. The jury could take into consideration the age, intelligence and knowledge of the plaintiff in regard to the machine and his capacity to know and appreciate the danger.

We have given to the questions presented upon this appeal a careful examination. It is the first time that we have had occasion to construe the statute, and it is conceded that the courts of other States are not uniform in the construction given similar statutes. It is a matter of importance to employers of labor in mills and factories, to know the standard of their rights and liabilities. The industrial life and development of the State are not only consistent with, but promoted by, the exclusion of young children from mills and factories. The child, educated and developed before beginning work of this kind, becomes not only more useful and efficient, but in all respects a better citizen.

While not necessary to the decision of this appeal, we note that the first section of chapter 473, Laws 1903, is omitted from the Revisal. The statute, as incorporated in sections 3362-63-64, Revisal, makes the prohibition dependent upon "knowingly and wilfully" employing a child. The original act, in declaring the prohibition, did not contain

these words.  Section 3, making the employment of the child a misdemeanor, properly required the act to be done "knowingly and wilfully."  The omission of section 1 was doubtless an oversight.  It may be of importance in the trial of actions, such as this, for injuries sustained, in regard to the burden of proof.  We simply note this change to the end that if the General Assembly should desire, they may restore section 1, which, under the language of the enacting and repealing clauses of the Revisal, would seem to be repealed.

