RIVERA, PLAINTIFF AND APPELLANT, *v.* RIBAS ET AL.,
DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action for Damages.

No. 2459.—Decided January 15, 1923.

DAMAGES—LABOR—CHILDREN—DANGEROUS OCCUPATIONS.—To employ a boy under fourteen years of age to feed cane fodder to oxen and pick up the cane that dropped from the carts drawn by the oxen, within the general lucrative business of cutting, hauling and grinding sugar cane, is to employ the boy in a dangerous occupation.

ID.—ID.—ID.—ID.—NEGLIGENCE.—An employer who contrary to law employs a boy under fourteen years of age in a lucrative occupation which is dangerous for the boy is guilty of negligence *per se* and liable for the damages that the boy may sustain in the course of the employment.

ID. — ID. — ID. — ID. — COURSE OF EMPLOYMENT. — It having been shown that although the boy under fourteen years of age in this case was not actually engaged at the very moment of the accident in feeding the oxen or picking up the cane that dropped from the carts, yet while he had been doing the latter work he was ordered by the driver, an employee of the defendants under whom the boy was working, to do a certain act, for which purpose he passed near the defendant's oxen which swerved and knocked the boy down and the defendant's cart passed over him, breaking one of his legs and seriously injuring the other, the oxen, cart, cane and driver being all a part of the lucrative business of the defendants in which the boy was engaged in violation of the law, it must be concluded that the boy suffered the accident in the course of his employment.

ID.—ID.—ID.—ID.—In this case the boy was eleven years old at the time of the accident and was healthy and able to work. He could not read or write. He sustained several injuries which caused him very intense pain, one of them being the fracture of a leg. He was in a hospital for four months. He was examined two years later, on the day of the trial, and was lame as a result of the fracture, and although he could work, it depended, to use the words of the expert physician, "upon the kind of work; if it is light work in which he need not walk, then he can do it, but if the work demands activity or violent exercise, the injuries would always be a drawback which would prevent him from doing what another man could do under the same conditions." *Held:* That under all of the circumstances of the case, among which are those above set forth, the damages should be fixed at $5,001.

The facts are stated in the opinion.

*Mr. L. Tormes* for the appellant.

*Messrs. J.* and *M. Tous Soto* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Herminia Rivera, as the natural mother with *patria potestas* of her minor son Manuel Rivera, brought this action in the District Court of Ponce against José Ribas and Angel Torres to recover the sum of ten thousand dollars damages for her said minor son. The defendants answered. The case was tried and finally the court rendered judgment dismissing the complaint. Thereupon the plaintiff took this appeal.

The record contains a "statement of the case and opinion" which we think it well to transcribe in full for the

better consideration and decision of all of the questions involved.   It is as follows:

"This case was set for trial and tried on March 16, 1921, both parties being present by counsel.

"Both parties introduced evidence and it was contradictory on material points.   After examining and weighing it as a whole, the court makes the following findings:

That Herminia Rivera, the plaintiff, is the mother, with *patria potestas,* of the boy Manuel Rivera who is thirteen years of age.

"That on the day of the accident the defendants were partners in an agricultural enterprise of growing sugar cane within the jurisdiction of this court.

"That on January 24, 1918, the minor Manuel Rivera was working in the employ of the defendants in the occupation of feeding cane tops or fodder to the defendants' oxen while the said animals were yoked to the carts used in hauling the cut cane, and it was also the duty of the boy to pick up the cane that fell from the carts while they were in motion.   For this work Manuel Rivera was paid twenty cents daily and he worked more than seven hours a day.

"That the said minor was employed without having been required to produce the certificate exacted by the Act regulating the employment of women and children and protecting them against dangerous occupations, his mother not being incapacitated or dependant upon the minor for her subsistence.

"That on January 24, 1918, while the carts of the defendants were hauling cane and the minor was walking behind the last one in order to pick up the cane that fell, he was ordered by the cartman, Anastacio Alvarado, to do something, he did not remember what, and in passing along the side of the road near the cart driven by said Alvarado the oxen swerved suddenly towards him and knocked him down and the cart went over him, breaking his right leg and seriously injuring his left leg, in consequence of which he had to remain in a hospital for four months, suffering intense physical pain and great mental agony, and is left permanently unfit for any work that requires the use of his legs.

"The mother testified that she estimated the damages suffered by the boy at ten thousand dollars.

"Having established the relation of employer and employee between the defendants and the minor, the first question of law to

be considered is whether the accident as described occurred in the course of the employment, that is, while the minor was lawfully acting within the sphere of his occupation.

"We have seen that his duties were to feed cane fodder to the oxen while they were standing yoked and to pick up the cane that fell to the ground while they were in motion. The minor himself testified that the accident did not occur while he was performing any of his duties. It occurred while he was acting under the order of the cartman in doing something else, he did not remember what. Therefore, it has not been proved that the minor suffered the accident within the course of his employment and this is an indispensable condition to the liability of the employers.

"The second question is that of the negligence of the employers, or their employee acting within his authority, as the proximate and effective cause of the accident.

"A sudden swerve of the oxen towards the minor was the proximate cause of the accident. There was no proof of any negligent act on the part of the defendants, or of any of their employees acting within their lawful functions, that provoked or occasioned that movement of the oxen which caused the accident.

"But the attorney for the plaintiff alleges that the act of employing the minor in contravention of the statute which forbids it constitutes negligence *per se* sufficient to make the defendants liable for the accident and for the damages occasioned. There is a conflict of authorities on this question. See 18 R. C. L. 552.

"There are cases which hold that there is a good cause of action even when the accident occurred while the employed minor was doing something without the sphere of the duties of his employment, considering the mere violation of the statute as the proximate cause of the accident. *Starnes* v. *Albion Mfg. Co.,* 17 L. R. A. (NS) 602. But we think that the weight of the authorities is manifested in the sense that in order to be able to recover damages it is necessary that the child be employed in occupations dangerous of themselves, and in that case the mere violation of the statute will be considered as negligence *per se* and the proximate cause of the accident. If the occupation is not of that character, the violation of the statute will be considered as an element of negligence to be weighed with the other acts of negligence shown and which may be the effective cause of the accident.. Furthermore, the accident must have occurred during the course of the employment and while the minor was acting within the legitimate sphere of his duties.

"The plaintiff in this case not having proved that the accident occurred within the course of the employment, nor that the employment given to the minor was essentially dangerous for him, nor that the defendants, or any of their employees acting within their attributes, committed any act or omitted any precaution that was the cause of the accident, we are of the opinion that the negligence arising from the violation of the statute is not sufficient to be considered the proximate cause of the accident, and the complaint should be dismissed without special imposition of costs."

Hence, the trial court held, in sypnosis, that (1) it was not proved that the minor suffered the accident within the course of his employment, which is an indispensable condition to the liability of the employer; that (2) it was not proved that the employment given to the minor was essentially dangerous for him, for which reason the act alone of employing the minor in violation of the statutes could not be considered as negligence *per se,* and that (3) it was not proved that the defendants themselves, or through any of the employees acting within their attributes, committed any act or omitted any precaution that was the cause of the accident.

In order to form a clear and just idea of this case it is necessary to begin by ascertaining what is the lawful effect of Act No. 42 of March 13, 1913, regulating the work of women and children, and protecting them against dangerous occupations.

Section 4 of that Act is applicable to this case and reads as follows:

"Section 4. That no child under the age of fourteen years who has not received from the Department of Education a certificate stating that he has done the work necessary for admission to the fourth grade of the public rural schools of the Island, or showing that he has passed the eighth grade of the public graded schools of Porto Rico, according to whether the child lives in the country or in town, or that he has completed the equivalent of such school work, shall be employed in any lucrative occupation during the hours that such schools are open; *Provided,* That this section shall not comprise any child who resides in a community in which there

are no schools within a reasonable distance wherein accommodation can be furnished, nor any orphan child or any child who for any other reason depends on his own efforts for support, nor any child whose parents are invalids and depend exclusively upon the work of the child for their maintenance. In such cases a certificate shall be obtained from the alcalde of the municipality wherein said child resides, which certificate shall state the fact that such condition or necessity exists, and authorize the employment of said child. A copy of this authorization shall be forwarded to the Bureau of Labor within the ten days following the issuance thereof; *Provided, further,* That if said child resides at a distance of one kilometer from a night school under the direction of the Department of Education of Porto Rico, said certificate shall be effective only during the time that the attendance of said child at the aforesaid night school shall be certified to monthly by the teacher of the school, unless a just cause should exist for the non-attendance of the child at said school.

"That all employers of children from whom certificates are required under the provisions of this Act, shall file these certificates, subject to the inspection of the officers of the Department of Education and of the inspectors of the Bureau of Labor. When such employment shall cease the certificates shall be returned to the children in whose names they may have been issued."

According to the third paragraph of section 13 of the Act, a " 'lucrative occupation' includes all work or works in factories, mills, centrals, machine shops or establishments or places of any kind where a factory or mechanical enter-- prise is carried on; in store-houses, stores, establishments or places of any kind where mercantile transactions are carried on, or estates, plantations farms, or places of any kind where agricultural, horticultural or pasturing is carried on and in all enterprises of mining or fishing."

Section 12 of the Act fixes the penalty to be imposed upon all employers who violate any provision of the Act.

This being so, it is necessary to conclude that the defendants employed Manuel Rivera, a boy less than fourteen years of age, in a lucrative occupation contrary to the law.

Some doubts might arise regarding the scope of the Act

to which we have just referred in relation to the juris-
prudence that we shall now analyze, in the sense that the
purpose of the Legislature was not to protect the minor
against dangerous occupations, but to insure his education.
Such doubts would be of importance, perhaps, if the minor
had been employed in a merely lucrative occupation and
outside of the said Act No. 42, which is the only statute
violated in this case. But here the minor was employed in
a dangerous lucrative occupation, not only in violation of
Act No. 42 of 1913, but also in violation of section 2 of the
Organic Act of this Island which the appellees themselves
invoke as applicable.

The final paragraph of the said section reads as follows:

"That the employment of children under the age of fourteen
years in any occupation injurious to health or morals or hazardous
to life or limb is hereby prohibited."

And the occupation of feeding cane fodder to oxen and
picking up the cane that falls from carts while they are in
motion is essentially dangerous. Although the ox is a
domestic animal, working with it requires the strength and
experience of a man. A cart or wagon drawn by oxen and
loaded with sugar cane is a heavy vehicle and difficult and
risky to manage. When it is used on a farm it generally
follows makeshift roads in bad condition. Picking up the
cane that falls while the cart is in motion, however slowly
it may be driven, requires great dexterity and alertness,
for it involves quick stooping and running. Being behind
the cart and with the eyes and the mind fixed on picking up
the cane and throwing it on the cart, the defects in the road
are not observed. These considerations and many others
that could be stated as deduced from the very nature of
things and from experience of the facts, show that to employ
a boy less than fourteen years of age, as in this case, to
feed fodder to the oxen and pick up the cane that falls from

the cart while the oxen are in motion and throw it back on the cart, is to employ him in an essentially dangerous occupa- tion. It is to engage him in rough exertions at the risk of his life so that the employer may obtain at a low price the labor that corresponds to a man or to a youth with strength, intelligence and experience duly developed. The fact of the repeated cases of injury and death that constantly occur in Porto Rico in connection with the driving of carts and the care of oxen sustains the conclusion at which we have arrived.

Let us now see what the courts have held in similar cases. Ruling Case Law, with its usual clearness, summarizes the jurisprudence as follows:

"In recent times statutes have been enacted in many if not in most states forbidding the employment of children either entirely or in certain specified businesses. And it has often been questioned whether such enactments have any effect, and if so what, on the liability of an employer to a minor who has been injured while working in violation thereof. After some hesitation and question- ing it has become the rule of the majority of courts that a violation of a statute forbidding the employment of children and subjecting the employer to a penalty is to be deemed conclusive evidence of negligence whenever such violation can be seen to have been the natural and proximate cause of an injury. In other words the violation of the statute is negligence as a matter of law, or negli- gence per se. Some courts, however, declare that the violation of the statute is to be considered only prima facie evidence of negli- gence, or a fact tending to prove negligence to be considered by the jury in connection with the other proofs in the case; and cases are not lacking which hold that the employment of a child under the statutory age is no proof at all of negligence on the part of the employer. * * * However this may be it is agreed on every hand that, in order to render the employer of a child liable for injuries sustained, there must have been a causal connection between the unlawful employment and the injury complained of. In the language of the law of negligence, it must be shown that the unlawful employment was the proximate cause of the injury. The mere fact that the child is injured during the period of its

employment does not give rise to a right of action. If, for example, the child die of some organic disease, or be injured by a stroke of lightning or other intervening act beyond the employer's control and not reasonably to be foreseen and anticipated, the employer will not be held liable. But if the injury be received while the child is actively engaged in the performance of the duties of the employment, the unlawful employment is generally held to be the proximate cause of the injury. The fact that the injury was received while the child was doing a **forbidden act or one** outside the scope of his duties does not destroy the causal relation between the employment and the injury. Accordingly, a minor under the statutory age who is employed to sweep the spinning room and to make bands in a cotton factory is entitled to recover for injuries sustained while tampering with dangerous machinery on another floor of the factory." 18 R. C. L. 552–554.

See also the notes to the cases of *Rolin* v. *R. J. Reynolds Tobacco Co.,* 141 N. C. 300, 53 S. E. 891, and *Elk Cotton Mills* v. *Grant,* 140 Ga. 727, 76 S. E. 836, reported in 7 and 48 L. R. A. (NS).

After studying the question carefully, not only the majority of the decisions, but the strength of their reasonings, convince us of the justice of their opinions that employing children in contravention of the law constitutes negligence *per se.* Such laws are enacted to protect infancy, taking into account that the development of human personality is gradual, and when an employer, regardless of the admonition, or rather the mandate, of the Legislature, uses the services of a child in a lucrative and dangerous occupation, he should be responsible for all damages caused the child by reason of such employment. A similar opinion was adopted by this court in the case of *Díaz* v. *Arkadia Sugar Co.,* 27 P. R. R. 537, citing Labatt and the jurisprudence applicable.

In the case of *Elk Cotton Mills* v. *Grant, supra,* the Supreme Court of Georgia said:

"The child-labor law was enacted for a useful purpose. It was

intended to be obeyed. A violation of the statute by hiring the plaintiff, a boy eleven years of age (and not within the excepted class) to work in the defendant's factory, constituted negligence per se as to him, and authorized a recovery for a personal injury sustained by him as a proximate result of such employment. Where a statute prescribes an absolute duty for the benefit of a class of persons, the violation of the statutory duty resulting in injury to one of such persons authorizes a recovery without other negligence; and the expression 'negligence *per se*' has quite generally been used to characterize such a breach of duty. It has often been so employed in this State. In 1 Thompson on Negligence, 10, it is said, that 'where the legislature of the State, or the council of a municipal corporation, having in view the promotion of the safety of the public, or of individual members of the public, commands or forbids the doing of a particular act, . . . . the general conception of the courts, and the only one that is reconcilable with reasons, is that the failure to do the act commanded, or the doing of the act prohibited, is negligence as mere matter of law, otherwise called negligence per se; and this, irrespective of all questions of the exercise of prudence, diligence, care, or skill; so that if it is the proximate cause of hurt or damage to another, and if that other is without contributory fault, the case is decided in his favor, and all that remains to be done is to assess the damages.' While a few cases have held that the violation of a statutory duty is only 'evidence' of negligence, and not negligence per se, such decisions, though rendered by courts of high standing, will not bear the test of reason; and this court has frequently held to the contrary. Atlanta & West Point Railroad v. Wyly, 65 Ga. 120; Louisville & Nashville R. Co. v. Hames, 135 Ga. 67 (4) (68 S. E. 805); 1 Hopkins' Pers. Inj. (2nd ed.) 18, 125.'' *Elk Cotton Mills* v. *Grant*, 140 Ga. 727.

Now, did the accident under consideration occur by reason of the employment? Is there in this case a causal relation between the unlawful employment and the injury on which the action is based? We have seen that the district court answered the question in the negative. On the contrary, our opinion, based on the very findings of that court, is that the question should be decided in the affirmative.

We admit that the mere fact that the boy was injured during the time of his employment does not give him a right of action, as was held by the Supreme Court of Illinois in *Strafford* v. *Republic Iron Co.*, 238 Ill. 371, 128 A. S. R. 129, 133, but here, as in the Illinois case, he was not only injured during the time of his employment, but by reason of his employment.

The boy in this case was actively engaged in his employment when he received the injury. Although at the very instant when the accident occurred he was not feeding cane fodder to the oxen or picking up the cane that fell from the carts to the road, it is certain that while he was doing the latter work he was ordered by the cartman, an employee of the defendants under whose orders he was working, to do a certain errand which required him to pass by the side of the oxen of the defendants and the oxen swerved and knocked him down and the cart of the defendants ran over him, fracturing one leg and seriously injuring the other, the oxen, cart, cane and cartman being parts of the lucrative business of the defendants in which they employed the boy in violation of the law.

The case submitted to our consideration is stronger than the *Strafford Case, supra,* in which the injury was received by the boy while he was doing a prohibited thing. Observe the reasoning of the court:

"Appellant, assuming the fact to be as contended by it, that appellee had of his own accord left the work he was employed and directed to do and engaged in work he was forbidden to perform when injured, argues that there is no more reason for saying his injury resulted from his employment than there would be if he had, while in appellant's employment, been struck by lightning. It is true, liability does not depend, alone, upon the employment, but the injury must be a consequence of such employment. The mere fact that a child employed in violation of law receives an injury in nowise resulting from the employment would not create a

liability. But such is not the case here. The vital and distinguish-
ing fact here is that appellee was employed by appellant to labor
in its manufacturing establishment and while engaged in perform-
ing services for it in said establishment he was injured. He was
in appellant's plant by virtue of his employment to work for it,
and the fact that he may have temporarily abandoned the work
he was employed and directed to do and engaged in a forbidden
line we think does not destroy the causal relation between the
employment and the injury, and if it does not, contributory negli-
gence of appellee would constitute no defense, and the court did
not err in refusing to submit that question to the jury. It is
imposing no harsh burden on appellant to hold that having unlaw-
fully employed the appellee to labor in its plant it is liable to him
for any injury received by him resulting from the performance of
services for it, whether those services were in the line he was di-
rected to perform or not. The law forbids, and was enacted for
the purpose of preventing, the employment of children in any ca-
pacity in such establishments as appellant's, and it is contrary to
the spirit of the law to say that the consequences of its willful
violation may be avoided by showing that the child left the work
given it to perform and negligently undertook to do something else,
which resulted in the injury. If appellant thought it had set ap-
pellee to perform work he could safely perform and had forbidden
him to perform other work thought to be dangerous to him, it was
bound, at its peril, to see to it that appellee did not attempt to
engage in a forbidden line. Appellant was bound to know that on
account of appellee's tender years he was not capable of a proper
appreciation of danger, and was also bound to know that on account
of his immaturity he was incapable of a proper comprehension of
the necessity for obedience to orders of those in authority, and,
under such circumstances, if it chose to violate the law by employ-
ing him, it assumed the burden of protecting him against his own
negligence while engaged in such employment. The fact that the
statute under consideration does not in express terms provide a
liability in damages for its violation, as is done by certain statutes
relating to mines and miners, can make no difference under the
construction given the statute in American Car Co. v. Armentraut,
supra. The statute was enacted for the protection of the health
and safety of children, and a liability for damages resulting from

its violation is created whether it is expressly so declared in the statute or not.'' *Strafford* v. *Republic Iron Co.,* 238 Ill. 371.

And it is also stronger than the case of *Tarnes* v. *Albion Mfg. Co.,* 147 N. C. 556, 17 L. R. R. (NS) 602, in which it was held that a boy of less than the statutory age employed to sweep the spinning room and make bands in a cotton factory had the right to recover damages for injuries suf- fered while he was tampering with a dangerous machine on another floor of the factory.

It remains only to consider the amount of the indemnity. The suit is for ten thousand dollars. On the date of the accident the boy was eleven years of age and was healthy and apt for work. He could not read or write. He suf- fered various wounds that caused him intense pain and as a consequence of one of them the fracture of one leg. He was in the hospital four months. Two years later, or on the date of the trial, he was walking lame as a consequence of the fracture, and although he could work, in the language of the medical expert, it would ''depend upon the kind of work; if it is light work in which he need not walk, then he can do it, but if the work demands activity or violent exercise, the injuries would always be a drawback which would prevent him from doing what another man could do under the same conditions.'' Under the foregoing and all of the circumstances of this case, five thousand and one dollars indemnity appears to us to be sufficient.

The judgment appealed from should be reversed and sub- stituted by another against the defendants for the sum of five thousand and one dollars to be used for the benefit of the minor under the direction of the District Court of Ponce, without special imposition of costs.

*Reversed.*

Justices Hutchison and Franco Soto concurred.
Justices Wolf and Aldrey dissented.

DISSENTING OPINION OF MR. JUSTICE WOLF, IN WHICH
MR. JUSTICE ALDREY CONCURS.

It seems to me that the opinion of the court below ought to have disposed of this case. I agree with that opinion. The discussion in this court, however, took a wider range and although pressure of other cases will not permit me to cover the ground more thoroughly, it is advisable to put this dissenting opinion on record.

While I maintain and shall attempt to show that the trial court theory has been changed in this case and that the complaint is insufficient in so far as the attempt is made to show an occupation dangerous *per se* under the Organic Act, I shall first consider whether the occupation here involved was, in fact, a dangerous one. That the occupation was a dangerous one is, as I understand it, the principal ground on which the majority of this court rely.

As the opinion of both courts show, the minor in this case was employed to feed the oxen when they were at rest and to pick up pieces of cane as they fell from the ox-cart on the road. The occupation of the defendant was the transportation of cane in ox-carts. The kind of work that the minor was made to do is an incident to, and no different from, the kind of labor that any boy would have to do around a farm if he were employed by a farmer. This work is essentially an agricultural pursuit. The dissenting judges in this case have no experience that would teach them that agricultural pursuits are more dangerous in Porto Rico than in other places, nor that it is more dangerous to follow an ox-cart carrying cane on the roads of Porto Rico than it would be in Louisiana or any other agricultural community.

One is bound to admit that there is some danger in a man or a boy following a cart on a public road, but I cannot see that such a danger would make the occupation of haul-

ing cane a dangerous one. I am not speaking now of the greater possibilities of danger to boys on the high road than to men, but solely and exclusively considering the occupation in which this boy was engaged. In order to sustain the opinion of the majority of the court in this case it apparently became necessary to say that the duties of this boy constituted a dangerous occupation. Successfully to maintain this theory it would be necessary to say that following an ox-cart to pick up cane or of feeding oxen at rest is always a dangerous occupation.

Of course there are dangers in the public streets and roads, especially for children, but I maintain that the dangers for a boy employed as this one was are less than they would be for a messenger in any crowded city nowadays. The dangers of crossing the streets in the heavy automobile traffic of nearly all large and populous towns seem to me considerably greater, not only for a boy, but also for a man. To say that the occupation of this boy was inherently dangerous is true only in the sense that any wandering around on the roads or streets is liable to be dangerous.

Once it is admitted that an occupation is inherently dangerous I have no quarrel with the cases that would make the employment of a minor in a dangerous occupation negligence *per se*. I gladly accede to that principle. I am strongly inclined to concur in the decisions of courts cited in the majority opinion. The social or economic reason underlying these decisions undoubtedly is that it is always perilous for children to be in a factory where there is dangerous machinery and that the courts will penalize such forbidden employments because of the huge and constant chance of danger to young lives. But *non constat* that there is any such like chance either on the high roads or in agricultural occupations. The chance of death or injury in either situation is relatively small, especially when contrasted to a factory with dangerous machinery so fascinating to boys.

Although I think I am justified, as I have already said, in assuming that the majority opinion relies on the fact that the occupation in which this minor was employed was dangerous inherently and also in assuming that the court relied on the Organic Act rather than on Act No. 42 of 1913, nevertheless I shall cursorily examine that act.

Except in its title, throughout this act there is no mention of dangerous occupations, but merely of lucrative occupations. Probably the idea was originally to treat of dangerous occupations, but in the process of the bill through the Legislature the act was made to include more cases of employment than those of dangerous occupations. In its essentials the act is a compulsory school law so far as minors are concerned. The prohibition of employment extends only to school times and school hours. There is no absolute prohibition in the statute against the employment of minors in dangerous occupations, or even in lucrative occupations, during vacations or after school hours. To attempt, therefore, to apply the doctrine of negligence *per se* to all lucrative occupations is an extension not yet countenanced by the courts of the United States. The courts do not hold that it is negligence *per se* to employ children in non-dangerous occupations.

To decide this case by an application of the Organic Act is to vary the trial court theory. The sole act that was invoked in the court below, as will be seen from the opinion and the record, is Act No. 42 of 1913. That the appellate court should not vary the trial court theory is not new doctrine in this court. *Torres v. Lothrop et al.,* 16 P. R. R. 172; *Quintero v. Morales,* 20 P. R. R. 290; *Porto Rico Benevolent Society v. Municipality of Ponce,* 28 P. R. R. 773; *Hernández v. Hernández,* decided on April 2, 1923, and see also *Torres Zayas v. Lothrop, Luce & Co.,* 231 U. S. 171.

The defendants were never apprised that they would be called upon to defend as not dangerous *per se* the occupa-

tion in which the minor was engaged. The complaint was not a sufficient notice in this regard, as I maintain.

For the other matters involved in the issues of this case I rely on the opinion of the court below, and I am authorized to state that Mr. Justice Aldrey concurs in this dissent.