HENDERSON v. DURHAM TRACTION CO.

(Filed June 6, 1903.)

1. STREET RAILROADS—*Negligence—Statutes—Suspension of Statutes.*

The failure of a street railway company to use fenders in front of its cars, if required by statute or ordinance, is evidence of negligence.

2. STREET RAILROADS—*Statutes—Suspension of Statutes—Corporation Commission—Acts 1901, Ch. 743, Sec. 2.*

A statute which requires all street railway companies to put fenders in front of cars and provides that the corporation commission may "make exemptions," does not authorize an exemption of all the street railway companies, as this amounts to a suspension of the statute.

ACTION by Talmage Henderson against the Durham Traction Company, heard by Judge *W. R. Allen* and a jury, at January Term, 1903, of the Superior Court of DURHAM County. From a judgment for the defendant, the plaintiffs appealed.

*Boone, Bryant & Biggs,* for the plaintiff.
*Manning & Foushee,* for the defendant.

CONNOR, J. This action was brought by the plaintiff, an infant suing by his next friend, for damages alleged to have been sustained by reason of personal injuries suffered by being struck by the defendant's street car in the city of Durham.

The complaint alleges that on or about the 30th day of

July, 1902, the plaintiff was passing from his employer's place of business to the south side of Main street, where the defendant has a double track about five feet apart; that about 9 o'clock p. m. a car was going westward on the northern track and another car was going eastward on the southern track, and he came out of the drug store to cross the street just as the car going westward was passing the door, and stopped for it to go by, and this car kept him from seeing the eastbound car; that he was ignorant of the approach of that car, and as he stepped from the southern one of the double tracks he was struck by the eastbound car, knocked down upon the track, caught under the car and dragged the distance of twenty yards or more, and was seriously injured. The complaint alleges that the defendant was negligent in three respects:

1.   That at the time of the approach of the car which injured the plaintiff, the motorman negligently and carelessly failed to sound the gong.

2.   That at the time of the injury complained of, the defendant had negligently and carelessly failed to properly equip its car, which struck and injured the plaintiff, with approved safe guards and appliances then in general use, in that it did not have a "fender" in front of said car, and if said car had been properly equipped with a "fender" the injury would not have occurred.

3.   That if the defendant's motorman had been keeping a proper lookout, as reasonable and ordinary care required him to do, he could have discovered the plaintiff in time to have given warning, or stopped the car in time to save him from injury.

The defendant in its answer denied each and every allegation charging negligence, and alleged that the plaintiff by his own carelessness and negligence contributed to the injury

which he sustained.  The following issues were submitted to the jury:

1.  Was the plaintiff injured by the negligence of the defendant as alleged in the complaint?

2.  Did the plaintiff by his negligence contribute to his injury?

3.  If so, notwithstanding the negligence of the plaintiff, could the defendant by the exercise of ordinary care have avoided the injury?

4.  What damage is the plaintiff entitled to recover?

Upon the conclusion of the testimony his Honor intimated that he would instruct the jury to answer the first issue "No." In deference thereto the plaintiff submitted to a judgment of non-suit and appealed.

The plaintiff introduced James Rogers, who testified that he saw the accident and it occurred on Main street between Fitzgerald's drug store and Five Points; that there are two street car tracks on Main street at the place of the accident, and the plaintiff was hurt by the car on the south track, the car going east.  The witness was on the south side of Main street and when he first saw the plaintiff, he (plaintiff) was coming out of the drug store on the north side of the street nearly opposite the witness, and started running across to the other side of the street; as he started across, he looked up and saw the car going west and stopped for it to pass; this car going west made no stop, and, as it passed, the plaintiff started to cross the track and the car going east caught him; he stepped behind the car going west.  The witness does not think he could see the car going east because of the car going west.  The two tracks are about five feet apart; the car that caught the plaintiff was not running very fast, that is, it was running at an ordinary rate of speed; when the car hit the boy, the motorman was noticing the car going west—was not looking to the front, but at the car going west.  The

motorman on the car that struck the boy seemed to speed up
a little and "I hollowed at the motorman and told him that
there was a boy under the car; then he stopped the car and
asked me where the boy was and I told him he was under the
car; the boy was struck by the front of the car; there
was no fender on the car. I could not see the boy at
first; he was next to the front wheels with his head
against the wheels, his feet under the car towards the
west and his body between the rails, his head was next to
the wheel on the other rail and he was dragged about twenty
yards. A fender is something in the front of a car like a cow
catcher, and runs within eight inches of the rails; from the
rail to the bed of the car is about two feet. The boy seemed
to be dead under the car, and there was some talk whether
they would move the car. There was nothing to prevent the
boy from seeing the cars when he started from the store.
When he started across the street the cars were about twenty-
five yards apart. This was not a street crossing. The boy
started to run just as the car going west passed him, and
had gotten to the middle of the track when the car going
east struck him, and knocked him down. The cars had not
quite passed each other when the boy was struck. It was
about half past 9 o'clock at night. It was a summer car and
open. Trucks on the car do not come up to the front; the
wheels are three or four feet from the front; there is a beam
in front of the wheel, which is eight inches above the track,
and this beam had passed over the boy when the car stopped.
I heard the gong, but don't know on which car it was
sounded."

The plaintiff testified that he got hurt, and has not been
able to remember anything about how he got hurt; that he
started running; the cars passed the store every day and
night; he had seen them pass with a bright light, knew where
they passed each other, and could see a car plainly at Five

Points, but did not remember seeing the car that night, nor anything about what occurred. He testified to the extent of his injuries.

The defendant introduced W. N. Latta, who testified that he was motorman on the car that struck the boy; that the car was going east, and just as it passed the car going west, the boy darted into the car at the front end; that the car was lighted up and had a head light and was a summer car; gongs on both cars were ringing; the seats on the summer cars run entirely across and parties get on at the side, first on the running board; the guard beam in front of the wheel is about four and a half inches from the pavement. When the witness saw the boy, he applied brakes and stopped the car as soon as he could; it went about twenty feet before he could stop; it was up grade and was going from four to six miles an hour; the cars pass each other at that point from forty-eight to sixty times a day. Witness heard no one until after the car stopped; when the boy went under the car "he kinder squealed." It took from ten to twenty seconds to stop; the sill of the car in front is about two feet five inches from the pavement; the boy did not go in front of the car or between the wheels until after he fell. Witness was looking in front and the boy was between the two tracks when he first saw him; witness was at the front end of the car, about four feet from the north side of the car; no obstruction to him; was looking to the front; the boy struck the car about the end of the running board; ran into it "like a bird between you and the sun;" the boy running would throw him under the car as the car was struck. The witness was looking in front and not at the other car passing; could not stop the car within twenty or thirty feet; the car was lighted and a head light shining.

F. D. Markham, a witness for the plaintiff, testified that the beam is four inches in front of the wheel on the winter

car; a street car fender is something like a cow catcher on an engine, and is so shaped that if it catches anything it throws it up; it runs about ten inches above the track and extends three or four inches on each side and two or three feet in front of the car; it is shaped something like the fingers of a grain cradle.

The defendant introduced, after objection by the plaintiff, a certified copy of the proceedings of a petition and order in the record of the Corporation Commission of North Carolina, as follows: "In The Matter of the Hearing, July 16, 1901, of the Petition of the Street Railway Companies of the State, asking to be Exempt from the Provisions of the Act Requiring City and Street Railway Companies to Use Vestibule Fronts and Fenders on Their Cars, It was ordered as follows: Ordered that the petition of the Street Railway Companies to be exempt from the provisions of the Act be denied as to vestibules, and as to the requirement of fenders the further consideration of the same is continued, and said street railway companies are exempt from the provisions of the Act as to fenders until ordered otherwise by the Commission."

In the view which we take of this case it is not necessary to pass upon the testimony. We are of the opinion that in one phase of the case the plaintiff was entitled to go to the jury. There is a conflict between the authorities, whether or not a failure on the part of a corporation to perform a duty imposed by public statute resulting in injury to another, is negligence *per se;* or whether it is evidence of negligence. After a careful examination of a number of authorities we are of the opinion that the sound doctrine is, that a violation of the public statute or a city ordinance is evidence of negligence, to be submitted to the jury. "It is generally held, and this we regard as the true doctrine, that the element of proximate cause must be established, and it will not necessarily be pre-

sumed from the fact that a city ordinance or statute has been violated. Negligence, no matter in what it may consist, can not result in a right of action, unless it is the proximate cause of the injury complained of by the plaintiff." Elliott on Railroads, Sec. 711. This court has held in *Edwards v. Railroad*, 129 N. C., 78, that a rate of speed greater than that allowed by law is always, at least, evidence of negligence, and under certain circumstances may become negligence *per se*," citing *Railway v. Ives*, 144 U. S., 418, in which it is said: "Indeed, it has been held in many cases that the running of railway trains within the limits of a city at a greater rate of speed than is allowed by an ordinance of such city is negligence *per se*. But perhaps the better and more generally accepted rule is, that such an act on the part of the railway company is always to be considered by the jury as at least a circumstance from which negligence may be inferred in determining whether the company was or was not guilty of negligence." This doctrine is supported by many well considered cases and we think it based upon sound principles. In *Hanlon v. Railroad*, 129 Mass., 310, it was held that "a violation of the city ordinance would be evidence, but not conclusive evidence, of negligence." In *Knupefle v. Ice Co.*, 84 N. Y., 488, it was held that "The violation of an ordinance is mere evidence of negligence, but not necessarily negligence." It should be submitted to the jury in connection with other testimony upon the question of negligence. In *Meek v. Railroad* (Ohio), Am. & Eng. Railroad Cases, 646, the same doctrine is held, the court using the following language: "While the violation of a law or ordinance is not *per se* conclusive proof of negligence that will render the company liable, yet it is competent to be considered with all of the other evidence in the case. The ordinance was enacted for the purpose of rendering the streets more safe and convenient for the public. It is a police regulation defining

what is a legitimate use of the streets by the railroad company. It was *a command to those* operating trains within the city limits, which it was their duty to obey, and a disobedience, either wilfully or negligently, is some evidence to be considered in determining the defendant's liability." The editor in his notes says that the weight of authority is to this effect.

This brings us to the question whether the failure to have a fender was a violation of the statute. Section 2, Chapter 743, Acts of 1901, provides "That all city and street passenger railway companies be and are hereby required to use practical fenders in front of all passenger cars run, manipulated or transported by them, and any company refusing or failing to comply with said requirement shall be subject to a fine of not less than $10 nor more than $100 for each day. The North Carolina Corporation Commission is hereby authorized to make exemptions from the provisions of this section in such cases as in their judgment the enforcement of this section is unnecessary." In the view which we take of the case, it does not become necessary to pass upon the constitutionality of that portion of the Act which confers upon the Corporation Commission the power to make exemptions from its provisions. The question was not presented or referred to in the argument. The right of the Legislature to confer upon any other governmental agency the power to exempt any persons or corporations from the operation of a statute, the violation of which is made a misdemeanor, is, to say the least, exceedingly doubtful. There is a marked difference between the power to make statutes of local application dependent upon a vote of the people and the power sought to be given the Corporation Commission in this instance. The statute here is complete, the duty is imposed, and the penalty for its violation fixed. A strict observance of the division of powers between the three co-

ordinate dep'artments of the government is absolutely essential to the preservation and the harmonious working of our system of government.   The Constitution confers upon the Legislature alone all legislative authority, and declares that the power of suspending the laws without the consent of the people ought not to be exercised.   An interesting discussion of this question may be found in *State v. Fields,* 17 Mo., 529 ; 59 Am. Dec., 275, and *Slinger v. Henneman,* 38 Wis., 505. The extent of the power which may be conferred upon the Corporation Commission is set forth and discussed by Shepherd, C. J., in *Express Co. v. Railroad Co.,* 111 N. C., 463 ; 18 L. R. A., 393 ; 32 Am. St. Rep., 805.

Conceding for the purpose of this opinion only that the portion of the Act in question is constitutional, we think by a proper construction of it the extent of the power conferred upon the Commission is one of *exemption* and not of *suspension.*   The order made by the Commission exempts all street railway companies from the provisions of the Act, as to the fenders, until otherwise ordered by the Commission, thus applying to all street railways in the State, and of course operating, if within the power of the Corporation Commission to suspend the statute.   This, we think, exceeds the power conferred by the statute and is therefore invalid, thus leaving the Act in force and the duty of the street railway companies to provide fenders as prescribed by the Act.   The failure to do so was evidence proper to be submitted to the jury upon the question of negligence and as to the proximate cause of the injury.   If the jury should find as a fact that the failure to have the fender was the proximate cause of the injury, that is to say, that the plaintiff would not have been injured if the defendant had provided its cars with fenders, and that the plaintiff was not guilty of contributory negligence, or, if guilty, that the defendant had the last clear chance to prevent the injury, the plaintiff would be entitled

to recover. The question presented by the testimony in regard to the relative rights and duties of street railway companies and travellers passing along and across the streets, is discussed in *Moore v. Street Railway Co.,* 128 N. C., 455. We simply decide, in this case, that the case should have been submitted to the jury under proper instructions. It is but just to the learned judge who tried the case to say that the question upon which this decision is based was not presented or argued before him or in this court. We have neither discussed nor passed upon the testimony bearing upon the second issue. His Honor having practically instructed the jury to find for the defendant upon the first issue, we confine our decision to his ruling in that respect. We must not be understood as expressing any opinion in regard to the other phases of the case. There must be a

New Trial.