HARRY STARNES, by his next friend, W. S. STARNES, v. THE
ALBION MANUFACTURING COMPANY.

(Filed 6 May, 1908).

1. **Minors, Unlawful Employment of—Constitutional Law—Parent
and Child—Public Good—Revisal, sec. 3362.**

Revisal, sec. 3362, making it a misdemeanor for the employ-
ment of children under twelve years of age by certain factories
or manufacturing establishments, is constitutional and valid and
not in contravention of the Fourteenth Amendment to the Con-
stitution of the United States as an unlawful restriction of the
right of the parent to the labor of the child, it being for the pur-
pose of promoting the general welfare by protecting minors from
injury by overwork, from liability to injury by machinery in
large manufacturing plants, and by facilitating their attendance
at school.

2. **Minors, Unlawful Employment of—Negligence per se—Revisal,
sec. 3362.**

It is negligence *per se* for a factory or manufacturing plant to
employ a child under twelve years of age to work therein, when
in violation of Revisal, sec. 3362. (*Rollins v. Tobacco Co.*, 141
N. C., 300; *Leathers v. Tobacco Co.*, 144 N. C., 330, cited and
approved).

3. **Minors, Unlawful Employment of—Evidence—Negligence—Causal
Connection—Proximate Cause.**

Defendant manufacturing company employed a child under
twelve years of age to work in its establishment, in violation of
Revisal, sec. 3362. His duties were to sweep out spinning room
and make bands, but on the day in question he went to another
part of the factory, as he had frequently done before, to see his
father, who was running a carding machine. When the father
was twenty steps distant, tending another machine, the child
attempted to pick a piece of cotton off the card and got his hand
caught and injured in the cylinder of one of the machines in his
father's charge: *Held*, (1) there was a direct causal connection
between the unlawful employment of the child and the injuries
sustained by him, for which the defendant is liable, occasioned
by his being employed on the premises, where he was subject,
through childish carelessness incident to his years, to tamper
with dangerous machinery; (2) there was no error in the lower
court refusing to instruct the jury upon the doctrine of proxi-
mate cause at defendant's request.

ACTION to recover damages for personal injury, tried before *Moore, J.*, and a jury, at March Term, 1908, of MECKLEN-BURG.

The court submitted these issues:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint?" Answer: "Yes."

"2. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer?" Answer: "No."

"3. What amount of damages, if any, is the plaintiff entitled to recover?" Answer: "Three thousand dollars."

From the judgment rendered the defendant appealed.

*Stewart & McRae* for plaintiff.
*Burwell & Cansler* and *R. S. Hutchison* for defendant.

BROWN, J.    It seems to have been admitted that the plaintiff was employed by defendant to work in its cotton factory, and that he was assigned to the spinning room on the second floor; that his duties were to sweep out the spinning room and to make bands; that plaintiff performed such duties from September, 1906, the date of his employment, until 5 January, 1907, when he was injured.    On that day he went down on the lower floor, as he had frequently done before, to see his father, who was running the carding machines.    While there plaintiff got his hand caught and injured in the cylinder of one of the machines in charge of his father in endeavoring to pick a piece of cotton off the card.    At the time his father was some twenty steps distant, tending another machine.

The plaintiff introduced evidence tending to prove that at the date of his injury he was not quite ten years of age, and that when he was hired to defendant by his father the defendant's agent and superintendent knew he was under twelve years of age.

Defendant offered evidence tending to contradict these allegations as to age and knowledge, and to prove that the boy was

taken in the factory upon his father's representations as to
age and under the belief that he was over twelve years of age.

In the view we take of the case it is unnecessary to consider
defendant's first, second and fourth assignments of error,
relating to exceptions to evidence. If the rulings of his
Honor were erroneous they worked no injury to plaintiff.

The contentions of defendant may be summarized as fol-
lows:

1. That section 3362 of the Revisal of 1905 is violative of
Article I, section 17, of the State Constitution, as well as the
Fourteenth Amendment to the Constitution of the United
States. (a) The act deprives the citizen of his property
rights without due process of law. (b) The act denies to
certain citizens the equal protection of the law.

2. That the court erred in holding that a violation of the
statute by employing plaintiff, knowing him to be under
twelve years of age, is negligence per se.

3. That the court erred in refusing the defendant's prayer
for instructions, as follows: "Unless the jury are satisfied by
a preponderance of the evidence that the plaintiff at the time
of the injury was engaged in the work for which he was em-
ployed, then his employment, though contrary to law, was not
the proximate cause of his injury, and the jury will answer
the first issue 'No.' "

The act in question was considered by this Court in the
recent cases of *Rollins v. Tobacco Co.*, 141 N. C., 300, and
*Leathers v. Tobacco Co.*, 144 N. C., 330. The constitu-
tionality of the law was not called in question, and therefore
not discussed in the opinion of the Court. It was assumed,
and we think correctly so, that the law is well within the
police power of the State and violates none of the funda-
mental rights of the parent.

We do not understand the learned counsel for the defendant
to deny to the Legislature the general power to regulate the
employment of children, but we understand his argument to

be that the act is void because it fails to designate the kind of labor which is prohibited to children under the age fixed by the statute.

Child-labor laws have been adopted in nearly all the States of this Union and Canada and are in force in nearly all the governments of Europe and of the Australian continent. They are founded upon the principle that the supreme right of the State to the guardianship of children controls the natural rights of the parent when the welfare of society or of the children themselves conflicts with parental rights. In this country their constitutionality, so far as we can ascertain, has never been successfully assailed. The supervision and control of minors is a subject which has always been regarded as within the province of the legislative authority. How far it shall be exercised is a question of expediency, which it is the province of the Legislature to determine.

The constitutional guaranty of the liberty of contract does not apply to children of tender years or prevent legislation for their protection. "So far as such regulations control and limit the powers of minors to contract for labor, there has never been," says Mr. Tiedeman, "and never can be any question as to their constitutionality. Minors are the wards of the nation, and even the control of them by parents is subject to the unlimited supervisory control of the State." 1 Tiedeman State and Fed. Con., p. 325.

Another eminent writer says: "The constitutionality of legislation for the protection of children or minors is rarely questioned, and the Legislature is conceded a wide discretion in creating restraints. Even the courts, which take a very liberal view of individual liberty and are inclined to condemn paternal legislation, would concede that such paternal control may be exercised over children, especially in the choice of occupations, hours of labor, payment of wages and everything pertaining to education, and in these matters a wide and constantly expanding legislative activity is exercised." Freund

Police Power, sec. 259. We do not think the Fourteenth Amendment in any way limits the power of the State to regulate in good faith the labor of minors. Speaking of the scope of this amendment and its effect upon the police power of the States, the Supreme Court of the United States says, in *Barbier v. Connally,* 113 U. S., 27: "But neither the Fourteenth Amendment, broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people."

In another case the same tribunal says: "This Court has, nevertheless, with marked distinctness and uniformity, recognized the necessity, growing out of the fundamental conditions of civil society, of upholding State police regulations which were enacted in good faith and had appropriate and direct connection with that protection to life, health and property which each State owes to her citizens." *Patterson v. Kentucky,* 97 U. S., 501.

The statute we are considering appears to have been framed in good faith and for the purpose of promoting the general welfare by protecting minors from injury by overwork, from liability to injury by machinery in large manufacturing plants, and by facilitating their attendance at schools. It is not an undue restriction of the right of the parent to the labor of the child, assuming that he has such right, when opposed to the general welfare. It does not close to him all fields of employment for his child, but only those in factories and manufacturing establishments where the child is more likely to be injured in health or body, or from his childish carelessness, as in this case, than in many other useful employments. In California a statute prohibiting the employment of children under fourteen years of age "in any mercantile institution, office, laundry, manufactory, workshop, restaurant or apartment house" was held not to be in conflict

with the Fourteenth Amendment. *Ex parte Spencer,* 86
Pac., 896.   In that statute there are certain exceptions and
regulations which are unnecessary to notice, as they do not
conflict with the principle decided, that such legislation does
not come within the purview and scope of the Fourteenth
Amendment and is well within the police power of the State.

The right to the labor of the child is not a vested right in
the parent, nor is it of any more importance than the right to
control its education.   Both are subject to the paramount
power of the State when it deems it necessary to exercise it
for the general good.

Upon this idea compulsory education laws have been en-
acted in a large number of States, and their constitutionality
has been sustained where drawn in question.   *State v. Bailey,*
157 Ind., 324; Freund, *supra,* sec. 264.

As to the second contention, it is decided squarely against
the defendant in the recent case of *Leathers v. Tobacco Co.,*
*supra,* where it is held not only that a cause of action accrues
to the child, if injured, but that it is negligence *per se,* and
not merely evidence of negligence, to violate the statute.

The writer can add nothing to the well-considered opinion
of *Mr. Justice Connor* in that case, and we find nothing in
the well-prepared brief of defendant which induces us to re-
verse it.   This brings us to consider defendant's third con-
tention, a matter not fully determined in the *Leathers case,*
and which may be thus stated: That the plaintiff cannot re-
cover, because the employment of him, although willfully and
knowingly done in violation of the statute, was not the proxi-
mate cause of his injury, inasmuch as he did not receive the
injury while in the discharge of the duties to which he was
assigned.

It is true that the plaintiff was not engaged in performing
his duties in the spinning room and had gone to the lower
floor, where the carding machines were, and got his hand
caught in one and badly cut.   Under such circumstances

147—36

there are respectable courts which hold that the injury is not the proximate result of a violation of the statute, because not received in performing the work the child was assigned to do, and that therefore the employer is not liable.

We are not impressed with the persuasive authority of those precedents and are not inclined to follow them. To do so would, in our opinion, unduly restrict the liability of the employer and would be contrary to the evident intention of the Legislature.

The act was designed not only to protect the health, but the safety of children of tender age from the indiscretion and carelessness characteristic of immature years. One who knowingly and willfully violates its provisions is not only guilty of an indictable offense, but he commits a tort upon the rights of the child and should be judged as a culpable wrong-doer and not as one guilty of mere negligence. The injury done the child is a willful wrong and does not flow from the negligent performance of a lawful act. The distinction between the two is well stated by *Mr. Justice Walker* in *Drum v. Miller,* 135 N. C., 208.

We think that the breach of the statute constitutes actionable negligence wherever it is shown that the injuries were sustained as a consequence of the wrongful employment of the child in the factory, in violation of the law. In this case we think there is a direct causal connection between the unlawful employment of the plaintiff and the injuries sustained by him. By employing this boy of ten years in violation of the law the defendant exposed him to perils in its service which, though open to observation, he by reason of his youth and inexperience could not fully understand and appreciate. "Such cases," says Judge Cooley, "must frequently occur in the employment of infants." Torts, p. 652.

In touching on the liability for mere negligence, independent of a statute making such employment a crime, Mr. Watson says: "The defendant will be liable for negligence, though

it is the act of a child injured, which is proximate to his own injuries, if such act is of a character to be expected of a child and in accordance with the usual indiscretion and errors of judgment characteristic of immature years." We do not mean to hold that the employer violating the act would be liable in damages for every fatality that might befall the child while in its factory. For instance, had the plaintiff died of heart disease, or from a stroke of paralysis, or been seriously injured by the willful and malicious act of a workman in knocking him against a machine, or injured from some cause wholly disconnected from the unlawful employment, the defendant could not be held liable in damages simply on account of the employment in violation of the statute. But we do hold that the employment, when willfully and knowingly done, is a violation of the statute, and that every injury that reasonably and naturally results is actionable. In this case the connection between the employment and the injury is that of cause and effect, and brings the defendant within the operation of the statute. It had no right to employ the boy. While in its employment and on its premises, in tampering, through childish carelessness incident to his years, with dangerous machinery, he was injured. Had he not been employed he would in all probability not have been on its premises and not exposed to the temptation to meddle with dangerous instruments.

We think the wisdom of such legislation is strongly illustrated by the facts of the present case. We find very few decisions in point, but there are two decided by the Supreme Court of Tennessee which fully sustain our views and commend themselves strongly by their force of reason to our judgment. *Queen v. Coal Co.,* 95 Tenn., 464; *Wire Co. v. Green,* 108 Tenn., 161.

The judgment of the Superior Court is
Affirmed.