## J. O. RICH v. ASHEVILLE ELECTRIC COMPANY.

(Filed 27 May, 1910.)

1. **Street Railways—Personal Injury — Conductors — Negligence— Improbable Results—Nonsuit.**

The plaintiff was injured while engaged in the service of the defendant company in collecting fares on a summer car run in cold weather. His evidence tended to show that the weather was too cold for a car of this character, and that he had unsuccessfully requested closed cars of his superior for the purposes required; that the curtains of the car ran tight in their grooves, and that the injury occurred while he was necessarily attempting to raise a curtain to collect fares, which had been caught in the grooves, by his hand slipping from the curtain and striking the other one with which he was holding to a stanchion provided for the purpose, which, from the blow, or from being numb by the exposure to the cold, relaxed its hold, causing plaintiff to fall from the moving car to his injury: *Held,* the injury complained of would not ordinarily arise or be likely to ensue from

the tightening of the curtain plaintiff was attempting to roll up, and a motion for judgment as of nonsuit upon the evidence should be allowed.

### 2. Street Railways—Personal Injury — Conductors — Negligence—Vestibules—Statutory Requirements—Causal Connections.

The plaintiff's evidence tended to show that the injury complained of was received by his falling from the running-board of a summer street car while collecting fares from passengers, under circumstances insufficient to establish the defendant's negligence. In order to avoid a nonsuit under the provisions of Revisal, secs. 2615 and 3800, requiring street passenger railways to use vestibule fronts at certain prescribed times, the plaintiff must show a causal connection between the violation by defendant of the statute and the injury sustained, or a judgment as of nonsuit upon the evidence will be sustained.

CLARK, C. J., dissenting.

APPEAL from *Joseph S. Adams, J.,* at December Term, 1910, of BUNCOMBE.

The plaintiff sued to recover damages for injuries received by him on Sunday morning, 3 December, 1905, between 10 and 11 o'clock A. M., while acting as conductor on one of the defendant's cars in Asheville. The plaintiff testified that he had been, prior to the injury, a conductor for three years; that he asked to be relieved of his regular run that morning and to fill an extra man's run, which was to take cars empty to Riverside Park—a distance of about three miles—to bring the cadets of Bingham School in to church; that when he reported to the car barn he found "signed up" on the bulletin-board two open summer cars for this special run; that the weather was cold, something near freezing, a strong wind blowing from the north, cloudy and "spitting snow"; the thermometer had dropped from 49° Far. at midnight to 33° Far. between 10 and 11 A. M.; that the summer cars are not equipped with a vestibule, but they have a glass front in the rear of the front platform, and in front of the rear platform; that the seats run across the car and at each end there is a roller curtain which can be pulled down or rolled up, as the weather conditions require; that these curtains work in grooves cut in posts at the ends of each seat; that fastened on the outside of each post is a substantial stanchion for holding to as one walks or stands on the running-board or step, which board or step runs lengthwise the car on either side and is used by passengers alighting from or getting on the car, and likewise used by the conductor in going from one end of the car to the other, in collecting fares of passengers; that after reporting at the car barn on the morning of 3 December, to Mr. White, the man in charge, he observed that the open cars were "signed up" for the run he was to make; that he com-

plained and requested closed cars on account of the weather; that White told him he would see about it; that he, the plaintiff, looked around and saw three closed cars apparently in good order and went to report to White, but he had gone, and the other car crews had left, so he took out the open car at 10 :05 A. M. and proceeded on his run to Riverside Park; that he had no passengers and took on none; that he had his overcoat, but did not put it on, and stood on the rear platform; that his car made the trip to the park in about 20 minutes; the cadets got aboard, pulled down the curtains, certainly on one side of the car, and the plaintiff started his car back to Asheville; that the car had gone about 200 or 300 yards when he started to collect fares; that he had to roll up the curtain, which was done by a pull, when it rolled up by a spring; that the curtain caught and he jerked it with his right hand, his hand slipped off and either struck his left hand with which he was holding to a stanchion, or it being numbed with cold, slipped aloose and he fell from the running-board and received the injuries for which he sues to recover damages. At the conclusion of the evidence his Honor allowed the motion, made under the statute, for judgment as of nonsuit, and the plaintiff excepted and appealed to this Court.

*Frank Carter* and *H. C. Chedester* for plaintiff.
*Martin & Wright* for defendant.

Manning, J., after stating the case: Construing the evidence in the view most favorable for the plaintiff, as we must do under the uniform rulings of this Court, where the motion for judgment as of nonsuit is allowed, we are not convinced that his Honor committed error in allowing the motion. In speaking of an injury occurring to the plaintiff in *House v. R. R., ante,* 397, where the plaintiff, a servant of the defendant, employed to clean its cars and wash its windows, was injured by attempting, with unusual force, to raise a window which had become tight in the sash, when her hand slipped, broke through the glass and was severely cut, *Mr. Justice Hoke* said: "We have repeatedly decided that an employer of labor is required to provide for his employees a reasonably safe place to work, and to supply them with implements and appliances reasonably safe and suitable for the work in which they were engaged. As stated in *Hicks v. Manufacturing Co.,* 138 N. C., 319-325, and other cases of like import, the principle more usually obtains in the case of 'machinery more or less complicated, and more especially when driven by mechanical power'; and does not, as a rule, apply to the use of ordinary every-day tools, nor to ordi-

nary every-day conditions, requiring no special care, preparation or prevision, where the defects are readily observable, and where there was no good reason to suppose that the injury complained of would result. The reason for the distinction will ordinarily be found to rest on the fact that the element of proximate cause is lacking—defined in some of the decisions as 'the doing or omitting to do an act which a person of ordinary prudence could foresee would naturally or probably produce the injury.' *Brewster v. Elizabeth City,* 137 N. C., 392. These windows not infrequently become tightened from different causes, and while it may be a great inconvenience and should perhaps be given more attention than it receives, no one would say that an injury of this character would ordinarily arise or be likely to ensue, and, therefore, no actionable wrong has been established." This case, we think, is decisive of the point presented in the present case, as to the tightening of the curtain which plaintiff was attempting to roll up. No one would say that the injury which plaintiff received—falling from the running-board or step—would ordinarily arise or be likely to ensue from this cause. No reason is given, nor does any appear, why the plaintiff, as he had charge of the car, did not examine these curtains before leaving the barn, if he had apprehended any injury as likely to ensue to him from their becoming tightened in the grooves, as such a condition was readily observable.

The liability of the defendant, however, was urged before us chiefly upon the ground that it was operating a car for passengers on its line in violation of sections 2615, 3800, Rev., which provides that "all street passenger railway companies shall use vestibule fronts    *   *   *   on all passenger cars run by them on their lines during the latter half of the month of November and during the months of December, January, February and March of each year.   *   *   *   *Provided further,* such companies may use cars without vestibule fronts in cases of temporary emergency in suitable weather, etc." While the evidence does not disclose any causal connection between the failure to use the vestibule front on the car the plaintiff was using and the injury received by him, or that defendant's failure to provide a vestibule front was an act which a person of ordinary prudence could foresee would naturally or probably produce the injury complained of, yet it is insisted by the plaintiff that the running of a passenger car without the vestibule front was forbidden by statute and constituted negligence for which the defendant is liable to plaintiff. In *Henderson v. Traction Co.,* 132 N. C., 779, this Court said: "After a careful examination of a number of authorities, we are of the opinion that the sound

doctrine is that a violation of the public statute or a city ordinance is evidence of negligence, to be submitted to the jury. It is generally held, and this we regard as the true doctrine, that the element of proximate cause must be established, and it will not necessarily be presumed from the fact that a city ordinance or statute has been violated. Negligence, no matter in what it may consist, cannot result in a right of action unless it is the proximate cause of the injury complained of by the plaintiff. Elliott on Railroads, sec. 711." This case has been approved in *Cheek v. Lumber Co.*, 134 N. C., 225.

In *Leathers v. Tobacco Co.*, 144 N. C., 330, *Mr. Justice Connor*, speaking again for this Court, reviewed in an elaborate opinion the whole doctrine, and quoted with approval, as expressing the conclusion reached by the best-considered authorities, the following language from Thompson on Neg., vol. 1, sec. 10: "When the Legislature of a State or the council of a municipal corporation, having in view the promotion of the safety of the public or of individual members of the public, commands or forbids the doing of a particular act, the general conception of the courts, and the only one that is reconcilable with reason, is that a failure to do the act commanded, or doing the act prohibited, is negligence as mere matter of law, otherwise called negligence *per se;* and this irrespective of all questions of the exercise of prudence, diligence, care or skill; *so that if it is the proximate cause of hurt or damage to another, and if that other is without contributory fault,* the case is decided in his favor, and all that remains is to assess his damages." The conclusion of this Court is thus stated in that opinion: "Upon careful consideration, we conclude that the law is correctly laid down by Judge Thompson, and the other authors quoted, and sustained by the best-considered decided cases. * * * While it is true that if there be any dispute regarding the manner in which the injury was sustained, or if, upon the conceded facts, more than one inference may be fairly drawn, the question should be left to the jury; yet it is equally well settled that when there is no dispute as to the facts, and such facts are not capable of more than one inference, it is the duty of the judge to instruct the jury, as a matter of law, whether the negligence of the defendant was the proximate cause of the injury. *Rolin v. Tobacco Co.*, 141 N. C., 300." Again, this Court was called upon to consider the question in *Starnes v. Mfg. Co.*, 147 N. C., 556, and, speaking through *Mr. Justice Brown*, said: "As to the second contention, it is decided squarely against the defendant in the recent case of *Leathers v. Tobacco Co., supra,* where it is held not

only that a cause of action accrues to the child, if injured, but that it is negligence *per se,* and not merely evidence of negligence, to violate the statute (Rev., sec. 3362).  *  *  *  This brings us to consider defendant's third contention, a matter not fully determined in the *Leathers case,* and which may be thus stated: That the plaintiff cannot recover, because the employment of him, although willfully and knowingly done in violation of the statute, was not the proximate cause of his injury, inasmuch as he did not receive the injury while in the discharge of the duties to which he was assigned." After reviewing the evidence in that case tending to show that the violation of the statute was the proximate cause of the injury received, the Court proceeded: "We do not mean to hold that the employer violating the act would be liable in damages for every fatality that might befall the child while in its factory. For instance, had the plaintiff died of heart disease, or from a stroke of paralysis, or been seriously injured by the willful and malicious act of a workman in knocking him against a machine, or injured from some cause wholly disconnected from the unlawful employment, the defendant could not be held liable in damages simply on account of the employment, in violation of the statute.  But we do hold that the employment, when willfully and knowingly done, is a violation of the statute, and that every injury that reasonably and naturally results is actionable.  In this case the connection between the employment and the injury is that of cause and effect, and brings the defendant within the operation of the statute." *Fowle v. R. R.,* 147 N. C., 491.

It seems to us that the principle is clearly settled by this Court in the cases cited, that, while the violation of a statute is negligence, yet to entitle the plaintiff seeking to recover damages for an injury sustained, he must show a causal connection between the injury received and the disregard of the statutory prohibition or mandate—that the injury was the proximate cause; and this requirement is fundamental in the law of negligence.  In the present case there is an entire absence of evidence tending to show such causal relation, but on the contrary, the plaintiff's evidence negatives it.  If we suppose the car equipped with a vestibule front, as required by statute—and the open cars are so equipped in many parts of the country—what causal connection existed between the injury and the negligence, or how could the failure to have a vestibule front be reasonably inferred as the proximate cause of plaintiff's injury?  Besides, the manifest purpose of the statute, considered in the *Leathers case* and the *Starnes*

*case,* being the statute forbidding the employment of children under twelve years of age in manufacturing establishments (Rev., sec. 3362), was not only to protect children of such tender years and immature judgment from injuries likely to ensue from their coming in contact with machinery, but their health from injury by such close confinement, as pointed out in *Rolin v. Tobacco Co., supra;* while the manifest purpose of the statute in the present case was to protect *the motorman* (not the conductor) from unnecessary exposure to the weather while performing his duty. It will be observed that the statute does not require any particular kind or make of car to be used, but refers only to its equipment. The same necessity for showing the causal or proximate relation between the injury and the alleged negligence is recognized as essential in *Troxler v. R. R.,* 122 N. C., 902, and in the numerous cases citing and approving that decision, for, as is said in that case: "Where the negligence of the defendant is a continuing negligence (as the failure to furnish safe appliances, in general use, *when the use of such appliances would have prevented* the possibility of the injury), there can be no contributory negligence which will discharge the master." And the second headnote in *Biles v. R. R.,* 139 N. C., 528, thus states the principle: "In an action against the defendant railroad, if the jury should find that the plaintiff, while in the performance of his duty, was injured as the *proximate consequence of a defective engine or defective appliance,* then the defense of assumption of risk is not open to the defendant, by reason of the Fellow-servant Act."

We have found no case in which the plaintiff was not required to show that his injury was the proximate consequence of the defendant's negligence, even in those cases where the doctrine of *"res ipsa loquitur"* applies; this causal or proximate relation is sufficiently shown by the act itself, and is inferred from the act from which the injury results. The evidence of the plaintiff, construed in the view most favorable to him, failing to show this causal or proximate relation between the injury received and the negligence of the defendant, we must hold that the judgment of nonsuit was properly rendered, and it is

Affirmed.

CLARK, C. J., *dissenting:* Two sections of The Code, 2615 and 3800, forbade the defendant to use the summer car (which has no wind shields) at the time it did—in December—and the latter section made it a misdemeanor.

In *Leathers v. Tobacco Co.,* 144 N. C., 330, this Court expressly repudiated the doctrine that the violation of a statute

was merely "evidence of negligence," and held that such con-
duct was "negligence *per se*," *Connor, J.,* pp. 345-348, citing
a wealth of authorities to that effect. He thus summed up:
"Upon careful consideration, we conclude that the law is cor-
rectly laid down by Judge Thompson, and the other authors
quoted, and is sustained by the best-considered cases." That
case was well considered and is based upon numerous authori-
ties of great weight. A due consideration for the dignity and
consistency of our own decisions requires that we adhere to
what was there said, after so great deliberation. Even if an
unlawful act is only evidence of negligence, that would entitle
the plaintiff to have the injury committed in the perpetration
of the unlawful act submitted to the jury.

If one is engaged in an unlawful act and unintentionally or
accidentally slays another, he is not absolved from responsi-
bility, but it is manslaughter. *S. v. Vines,* 93 N. C., 493;
*S. v. Hall,* 132 N. C., 1107. If one while engaged in doing an
unlawful act injures another, he is certainly liable for damages.
The defendant was violating the law and in the commission of a
misdemeanor in running the car. The injury to the plaintiff
could not possibly have occurred if the defendant had not dis-
obeyed the statute. There was no evidence of contributory
negligence (though the burden to prove that was upon the de-
fendant), and it was necessarily error to withdraw the case
from the jury.

Aside from the statute, it was negligence for the defendant
in midwinter, with the temperature down to freezing and a
strong wind blowing from the north, cloudy and "spitting
snow," to refuse the plaintiff's request for a closed or winter
car, of which there were three, at least, idle under the shed
ready for use. It was in violation of the ordinary dictates of
humanity, as well as of the statute, to require the plaintiff to
take instead an open summer car in such weather on a run of
three miles out beyond the city limits and back. The plaintiff,
in the regular winter car which could and should have been
given him as he requested, would have been protected in the
aisle from the weather, while collecting the fares, and could not
have slipped and been hurt. As it was, the curtains being let
down to protect the passengers, the plaintiff was obliged to
dodge along, under one curtain after another, which he had to
lift so that he could collect the fares. While doing this he had
to walk along the running-board, which was slippery, for it
was "spitting snow," and his hands being numb with cold and
the strong north wind blowing the curtains, his hands slipped
when trying to raise a curtain which was "caught." The plain-
tiff in consequence fell off the running-board and was hurt.

SANFORD v. EUBANKS.

The facts not being denied, and the law fixing the defendant with negligence, the judge might well have held as a matter of law that such negligence was the proximate cause of the injury. Certainly, he should not have denied the plaintiff the right to have a jury pass on the question. The exposure by the defendant to such weather, unnecessarily and over his protest, was more than negligence. It was inhumane. The statute made the conduct of the company a misdemeanor, even if no harm had accrued to the plaintiff.

The plaintiff, in my judgment, has a right to have a jury, instead of the judge, to pass upon his issues. Employees are entitled to protection from such heedless disregard of their comfort and safety as was shown on this occasion, and are surely entitled to recover for injuries which a jury shall find were sustained from such cause.