D. C. DORSETT v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 8 March, 1916.)

**1. Railroads—Municipal Corporations—Town Ordinances—Speed of Trains—Trials—Evidence—Negligence.**

Where an ordinance of an incorporated town forbids the operation of through trains at a certain crossing within its limits at a greater speed than 4 miles an hour, and requires that a trainman shall go before the train at this place a distance of 50 feet to warn pedestrians, it is reversible error for the trial judge to refuse to instruct the jury that the violation of this ordinance was evidence of negligence on the part of the defendant, and they should answer the issue in plaintiff's favor if they found such was the proximate cause of the personal injury sued on, when there is evidence to sustain the request so to charge.

**2. Railroads—Municipal Corporations—Town Ordinances—Through Trains—Local Switching.**

A locomotive from a through train is considered as a part thereof while switching cars therefrom to be left at its local stop, within the meaning of an ordinance of the town requiring that the speed of such trains at a certain crossing within the town shall not exceed a speed of 4 miles an hour, etc.

APPEAL by plaintiff from *Devin, J.,* at October Term, 1916, of WAYNE.

*Langston, Allen & Taylor for plaintiff.*
*O. H. Guion for defendant.*

CLARK, C. J. This was a civil action for the recovery of damages for personal injuries sustained by plaintiff at a railroad crossing in Goldsboro. The plaintiff, who lived in the eastern part of Goldsboro, several blocks from his place of work with a manufacturing company, crossed the railroad track at Elm Street going from his home to his work. Elm Street runs east and west and the defendant's track runs north and south on Center Street. Elm Street crossing is a regular crossing within the corporate limits of the town. The railroad tracks at that crossing are 5 or 6 feet lower than the street. There is an embankment on both sides of the crossing and, in addition, there were cross-ties piled up on the left-hand side. The freight depot of defendant is 200 or 300 yards south of this crossing and the track makes a slight curve between the crossing and the freight depot.

The plaintiff testified that as he approached the crossing on his bicycle he looked to the left towards the freight depot for a train, and then looked to his right just as he was nearing the first track, and at that moment the tender of the engine struck him; that he was going slow and the wheels of the tender caught his right foot; that he was

knocked unconscious. He testified that he looked in both directions for the light of the train; that he did not hear any engine; that he looked as he was starting down the grade and looked again when about halfway down, and neither saw nor heard any train. There was evidence that the train was running 25 or 30 miles an hour, and that it was not blowing a whistle or ringing a bell, and that the embankment and cross-ties prevented the plaintiff seeing it. There was evidence on the part of the defendant that it was running only some 4 miles an hour, and that it was ringing the bell at every crossing.

The ordinance of the city was put in evidence, which was as follows: "It shall be unlawful for any railroad or railway company to operate any through or local freight train or passenger trains through the city of Goldsboro on East and West Center Street at a rate of speed exceeding 4 miles per hour, and the said railroads and railway companies are hereby required to have a flagman proceed 50 feet in front of every through or local freight train or passenger train to warn persons of the approach of said train. Any railroad or railway company violating this ordinance shall be subject to a fine of $50 for each offense."

The plaintiff requested the court to charge the jury as follows: "If you shall find from the evidence that the defendant company was operating its trains at the time of the injury, through the city of Goldsboro, on East Center Street, at a rate of speed exceeding 4 miles per hour, and in violation of the city ordinance, the court charges that such violation would be evidence of negligence." The court refused, and the plaintiff excepted.

The plaintiff requested the court to charge as follows: "If you shall find from the evidence that the defendant company was operating the train which injured the plaintiff either at a rate of speed exceeding 4 miles per hour or was operating the train which injured the plaintiff without having a flagman proceed 50 feet in front of said train, in violation of the city ordinance, and you shall further find that either the running of the train in excess of a rate of speed of 4 miles per hour or of the failure to have a flagman 50 feet in front of the train was the proximate cause of the injury received, it would be your duty to answer the first issue 'Yes.'" The court refused, and the plaintiff again excepted.

The refusal to give the above prayers was error. It appears that the judge refused these instructions on the ground that the train in question, which consisted of an engine and tender, did not come within the description in the ordinance, "to operate any through or local freight train or passenger train through the city of Goldsboro." From the evidence, this was part of a through freight train passing by Goldsboro. In doing so it cut off six cars which the engine ran up Center Street and onto a siding, where it left the six cars, and then the engine and tender

of the train were passing back to the freight depot to be connected onto the rest of the train. The engine and tender were a part of the through train, and in cutting off these six cars to be left at Goldsboro and then proceeding back to the main line to reconnect with the train, it was doing a necessary part of "operating a through train." This was not the work of a shifting engine, which is kept locally at a point to move cars from one location to another, or to shift them about in making up a train, but it was an essential part of the duty of this through train, which had to drop or take up cars at different stations on its journey. The evidence of the defendant was that this engine and tender were a part of such through train, and that having placed six cars on the siding, the engine and tender were proceeding to the freight station to reconnect with the cars it had left there.

There are other errors assigned which we need not consider, as they may not happen in another trial. There was evidence on the part of the defendant that the engine was not running more than 4 miles an hour, and that the bell was rung at every crossing. The evidence of the plaintiff contradicted this, and it was for the jury to settle the controversy. The plaintiff was entitled to have the jury consider whether at the time of the injury the defendant was operating any part of its through train, *i. e.*, the engine and tender thereof, in violation of the ordinance.

In refusing the above instructions there was

Error.