MARY INGLE v. ASHEVILLE POWER AND LIGHT COMPANY.

(Filed 19 December, 1916.)

**1. Carriers of Passengers—Street Railways—Negligence—Rules of Company —Ordinances—Statutes.**

It is negligence *per se* for a motorman on a street car to run the car on the streets of a town without giving the signals or warnings required by the company's rules, and to look back over his shoulder in violation of such rules; and in running at an excessive speed in violation of a town ordinance; and for the company to have failed to provide the car with a proper fender, as required by the statute.

**2. Evidence—Negligence—Issues—Last Clear Chance.**

An issue as to the last clear chance is properly submitted to the jury under evidence tending to show that plaintiff's intestate was struck and killed while attempting to cross the defendant's track carrying a basket of peaches for delivery to his customer; that the motorman was looking back over his shoulder and otherwise should have seen the plaintiff, but approached at an excessive speed, without signals or warnings and under circumstances tending to show he could have avoided the impact in the exercise of reasonable care.

**3. Carriers of Goods—Street Railways—Negligence—Trespassers—High Degree of Care.**

Pedestrians and drivers of vehicles upon the streets of a town are not trespassers and have equal rights with street cars operated thereon; and a motorman in running such cars owes a higher degree of care in avoiding injuring them when upon the track than is required of a locomotive engineer under like circumstances.

APPEAL by defendant from *Harding, J.,* at May Term, 1916, of BUNCOMBE.

*Mark W. Brown and Zeb F. Curtis for plaintiff.*
*Martin, Rollins & Wright for defendant.*

CLARK, C. J. This action is brought by the plaintiff as administratrix of her husband, who was killed by defendant's street car on Montford Avenue in Asheville, 13 September, 1915. Four issues were submitted, *i. e.,* negligence, contributory negligence, last clear chance, and damages. The first three issues were answered "Yes" and the damages for the death of the intestate were assessed at $4,750.

The intestate was a farmer and went to Asheville on the day of his death with a load of peaches, potatoes, and apples for sale, accompanied by one of his five children, a little boy. At a house on Montford Avenue he was given an order for peaches and returned to his wagon on the opposite side of the street to get them. Between his wagon

and the house where he was to deliver the peaches were two parallel street car lines, running north and south, and he had to cross both tracks in returning from his wagon to deliver the peaches. While he was filling his peck measure with peaches the street car on the west track passed going south, and soon afterwards he crossed that track going in a diagonal direction towards the house where he was to deliver the peaches. When upon the east track he was struck by a street car going north down a heavy grade, and there was evidence that it was going at an unlawful rate of speed—25 or 30 miles an hour. There was evidence that no signals were given of the car's approach and that the car was not equipped with fenders. The deceased was going in a stooping position with the peaches and did not see the approaching car, which was being operated as an extra. He could have been seen by the motorman at a distance of 300 feet, but the motorman was looking backward over his shoulder, in violation of the rules of the defendant, and gave no signal by ringing the bell or otherwise until the car was so close to the deceased that he could not escape. The brakes were not applied until after the collision.

The deceased was in the middle of the east track and jumped backward in an effort to escape, but did not have time to save himself. He was knocked into the air across the west track, falling on the brick pavement and rolled then 10 or 11 feet, altogether from 30 to 40 feet. The car ran 84 steps to 100 yards after hitting deceased, but it is in evidence that if it had not been exceeding the lawful speed it might have been stopped within 8 or 10 steps.

The witness Crinkley testified: "A few feet after we passed the other car I saw the man that got struck on the west side of the westerly track, walking toward the east, with some little measure in his hand, this way. He was looking down; looking neither to the right nor to the left; walking, with his head down, across the street. He walked on, and as he approached the track, not looking, the thought struck me that the motorman didn't see him, which, of course, attracted my attention—his coming on the track and the car speeding down the line. He walked to where he stopped, almost in the center of the track, and about 25 feet from there the motorman used his gong. He stepped back—jumped back—about a step or something that way, and disappeared to view under the railing. You can see coming down the street, coming at an angle, and as he came in closer, at the moment the car struck him, I couldn't see him, but in a moment his body was out; using this as an illustration, his body was out in that direction, striking the street. When he came down his body was rolling, and I should say it knocked him 40 feet. The motorman, in the meantime, had kept on until he applied the brakes. He pulled his brakes around, I sup-

pose, to stop as quick as he could. The car ran, I would guess, 200 feet after striking the man."

The defendant insists that the motion to nonsuit should have been allowed, but, taking the evidence of the plaintiff to be true, as we must, on such motion, the defendant's car was being operated at a high and unlawful rate of speed, down grade on a steep track at the time plaintiff's intestate was struck and killed; he was knocked about 40 feet, which is proof that the car was running at a frightful speed, as was testified to by several witnesses, and there was the further fact that the car after striking him ran 84 steps to 100 yards before it could be stopped; the ordinances of Asheville forbade the car to be operated at a greater rate than 20 miles an hour. This of itself was negligence. *Dorsett v. R. R.,* 171 N. C., 109; *Norman v. R. R.,* 167 N. C., 543; *Ledbetter v. English,* 166 N. C., 125.

It was also in evidence that no signals were given of the car's approach and that the motorman was looking backward over his shoulder without keeping a proper lookout, in violation of the rules of the defendant. This was also negligence. *Hopkins v. R. R.,* 170 N. C., 485; *Pickett v. R. R.,* 117 N. C., 616.

There was also evidence that, in violation of law which required the use of "practical fenders in front of all passenger cars," this car was not so equipped; and this failure was negligence. Rev., 2618, 3801; *Smith v. R. R.,* 162 N. C., 31; *Henderson v. Traction Co.,* 132 N. C., 779. This case is almost identical on the facts with *Norman v. R. R.,* 167 N. C., 533.

The defendant insists that the third issue, as to the last clear chance, should not have been submitted. Exc. 2, 3, 5, and 7. We think it was eminently proper that this issue should have been passed upon by the jury. Though the deceased might have been guilty of contributory negligence in not exercising greater care in crossing the street, yet if the defendant had been running the car within the lawful rate of speed and the motorman had been looking forward and not backward over his shoulder, and had given the signals and slackened speed, it might well be that the plaintiff's intestate would not have been killed. The pleadings and the evidence presented this issue, and it was in the province of the jury to determine the truth.

There is even more care required of the motorman of a street car than of the engineer on a locomotive. The citizen has an equal right in the street with the traction car, but he is a trespasser, ordinarily, on the track of a railroad. The motorman is required to run at a lower rate of speed and observe a more careful lookout for persons who may cross, and ordinarily are crossing, a street car track at all hours. The street car company has no right to the exclusive use of

48—172

the street, and it must respect the rights of pedestrians and drivers of vehicles of all kinds, who have the same right to use the streets as themselves. *Norman v. R. R.,* 167 N. C., 537, 538; *Moore v. Street R. R.,* 128 N. C., 458. A high degree of care is imposed on the street car company to keep a careful lookout and to equip its cars with such appliances as will prevent injury to others who are using the street.

The deceased had the right to go across the track to deliver his peaches to a customer. There was evidence that the defendant's motorman saw or by the exercise of ordinary care should have seen the deceased approaching and going upon the track 300 feet before the impact; and if so, he should have seen from the stooping position of the deceased that he was carrying a burden and was apparently inattentive and unaware of the approach of the car. If so, he should have slackened the speed of his car and given the signals. The witness Crinkley, the only passenger on the car, testified that he saw all this, and that the motorman was looking the other way and did not give the alarm nor slacken speed.

We cannot see that there was any error which entitles the defendant to a new trial.

No error.