C. O. BOYLES v. CHARLOTTE ELECTRIC RAILWAY COMPANY.

(Filed 28 November, 1917.)

Railroads—Street Railways — Concurring Negligence — Pedestrians — Last Clear Chance—Contributory Negligence.

A pedestrian should be observant for his own safety before crossing a street car track; and where he is familiar with the car schedules and the location of the track, and walks along the track and turns into contact with a rapidly running car, with a headlight and lights within the car, his negligence, if the car was running at an excessive speed, concurs with that of the company's negligence, if any, continuing to the time of the injury, and will bar his recovery; and the doctrine of the last clear chance has no application. *Ingle v. Power Co.*, 172 N. C., 751, cited and distinguished.

APPEAL by plaintiff from *Justice, J.*, at the November Term, 1916, of MECKLENBURG.

This is a petition to rehear.

*J. W. Keerans for plaintiff, petitioner.*
*Osborne, Cocke & Robinson for defendant.*

ALLEN, J. This appeal was disposed of on the former hearing without an opinion, and we would now follow the same course but for the insistence of counsel that our decision is in conflict with *Ingle v. Power Co.*, 172 N. C., 751. The distinction between the two cases is clear, and indeed there is but one point of similarity, and that is in both cases the cars were running at an excessive rate of speed.

In the *Ingle case* a car had passed along a parallel track a few minutes before the injury complained of; the car which struck the deceased was not running on any schedule, and was an extra; it was not equipped with a practical fender which is required by law; the injured party was standing in the middle of the track in a stooping position; he could have been seen by the motorman to be on the track when the car was 300 yards distant; if the car had been running at a regular rate of speed it could have been stopped within 8 or 10 steps; the brakes were not applied until after the collision, and it was held there was evidence that not-

withstanding the negligence of the plaintiff, which was found by the jury, the defendant could have avoided the injury by the exercise of ordinary care.

In the present case the car was not an extra and was running on regular time; there is no evidence the car did not have a practical fender; the plaintiff was not on the track in front of the car; he walked into the front right-hand corner of the car, and as the car was approaching he was on a path away from the track, walking slowly.

The uncontradicted evidence shows:

(1) That the plaintiff was in the habit of going this same route; that he knew the location of the car track, and that he knew the car passed about the time of the day at which he was injured.

(2) That the view was unobstructed.

(3) That he took absolutely no precautions for his safety, but walked heedlessly and recklessly into the car.

(4) That there was a headlight on the car, and it was making enough noise to be heard by the witness Henley 30 feet further up the track than the plaintiff.

The plaintiff testified that he did not know anything as to how he was injured, and the only eye-witness introduced by the plaintiff testified, among other things: "Before the car struck him, I saw the bulk of a man there; it looked like a man coming; it looked like—in fact, I didn't know anything about the stops of the street car there; I just thought the man was coming to get on the car, and the car was running pretty fast. . . . Boyles was on the south side, and the right-hand corner of the street car—the front right-hand corner—struck him. When I first saw Boyles he looked like he was going to cross the track—looked like he was coming toward us. We were in a triangular shape from the south, the street car running in this direction; he was on the south side, we on the other side, the Norfolk-Southern engine straight back from us at the water tank. When I first saw him I could not tell anything about his appearance or what he was doing; it was a quick thing to look at, because by the time I saw him the car was close—coming in, too, and the thought struck me, a man was going to get on the street car, and I looked to see why he wasn't stopping. . . . Looked like he was coming towards the track—apparently, going slowly, and looked like he was going to catch the car. When I saw him he was about 20 feet from me. There was a headlight on the car. I suppose the car was lit up; I judge it was. I heard the car before I saw the man; I heard it when it started away—when it stopped up above at the crossing. I don't know whether he walked into the car or not; it struck him, somehow or other. I guess he must have walked into it—he got into it some way or other; he was not on the track. . . . It was my understanding that when Mr. Boyles

walked up towards the street car he was going to his work; it looked like he was coming right towards me. *He slowed up as he got near the car line.* When a man is going to catch a car, he goes to the line—I do; I don't go beyond the line; I don't know whether he went beyond the line. *It looked like he slowed up as he got to the car;* it looked like he was walking slow; he didn't have time to walk far: It all happened so quick, I couldn't tell whether he slowed up or not. *I thought he was going to catch the car."*

Upon this evidence it may well be said, as was said in *Crenshaw v. Street R. R.,* 144 N. C., 325, that if the defendant was negligent, the plaintiff was guilty of such concurrent negligence, continuing up to the time of the injury, as will bar a recovery.

There is no evidence raising the doctrine of the last clear chance, because up to the last moment the plaintiff was in a safe place, and the motorman could not anticipate that he would walk into the car.

"It must be conceded that if one be walking along or crossing a track it is not only his duty to turn off when signaled, but to keep a lookout— look and listen for the approach of a car. The track itself is notice that a car may at any moment approach. We are speaking only of street railways in this connection." *Davis v. Traction Co.,* 141 N. C., 134.

In *Crenshaw's case* the Court says: "Speaking of the rights of foot passengers on streets, and the duty to use their powers of observation when approaching vehicles or street railways, the Court, in *Railway Co. v. Block,* 55 N. J. L., 612, said: 'The degree of care required in approaching and crossing street railways exceeds that required in approaching and passing foot passengers, not because the right of the foot passenger and the right of the driver of a vehicle differ, but because of the circumstances. The vehicle usually travels at a greater speed—it cannot be so quickly stopped or diverted from its course; a street car cannot turn aside or even retrace its steps.' On this part of the case the decision in *Parker v. R. R.,* 86 N. C., 222, and *Bessent v. R. R.,* 132 N. C., 934, are very much in point. A rational being should not needlessly venture into places of peril, and if he does he should use proper precaution to guard against injury. If he fails to do either, and suffers damage in consequence thereof, it must be referred to his rash act and gross inattention to his own security as the true and efficient cause. *Express Co. v. Nichols,* 3 N. J. L., 439. But numerous courts have stated this principle with substantial uniformity, and we find that it has been applied to facts not unlike those now presented to us, and to the extent of denying the plaintiff's right of recovery."

We see no reason for disturbing the judgment.

Petition dismissed.